Richard C. Giller (SBN 117823)
Email: rgiller@reedsmith.com
Ashley Rodriguez (SBN 307007)
Email: arodriguez@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Attorney for Plaintiffs, Andre Ward and
Roc Nation Sports, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WARD, an individual; ROC NATION SPORTS, LLC, a Delaware Limited Liability Company,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Subscribing to Certificate No. B1132HGBA15062712; and INTERNATIONAL SPECIALTY INSURANCE, INC., a North Carolina Corporation,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  BREACH OF CONTRACT;<br><br>2.  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; and<br><br>3.  BREACH OF DUTIES BY A WHOLESALE INSURANCE BROKER.<br><br>**[JURY TRIAL REQUESTED]** |

Plaintiffs Andre Ward and Roc Nation Sports, LLC allege as follows:

## NATURE OF THIS ACTION

1.      Plaintiffs Andre Ward ("Ward") and Roc Nation Sports, LLC ("Roc Nation Sports"), bring this lawsuit against Defendants Certain Underwriters at Lloyd's of London subscribing to disability insurance Certificate No. B1132HGBA15062712 ("Lloyd's"); and International Specialty Insurance, Inc. ("ISI") because, among other things:  (a) Lloyd's originally and wrongfully denied insurance coverage for this clearly covered loss under a policy that incepted two

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

US_ACTIVE-144077741

months after the injury at issue and failed to properly and timely advise Plaintiffs that the claim was being analyzed under an incorrect policy; (b) Lloyd's wrongfully refused to accept or deny, in whole or in part, insurance coverage for this clearly covered loss under the Subject Policy (defined below) claiming that it did not have sufficient information even though the information provided by Plaintiffs was the exact same information previously provided to Lloyd's that Lloyd's apparently believed was sufficient enough to deny coverage under the later issued policy on specific policy grounds other than whether it was the correct policy year; (c) ISI failed to properly tender Andre Ward's claim under the correct policy year; (d) Lloyd's has unreasonably delayed, stalled and engaged in coverage gamesmanship to avoid paying the valid claim; (e) Lloyd's failed to view the evidence submitted by Mr. Ward in the light most favorable to providing coverage for the loss, as Lloyd's was required to do but, instead, improperly viewed the evidence solely through the lens of creating an artifice for denying coverage; (e) ISI breached the duties it owed to Mr. Ward as a wholesale insurance broker and, therefore, acting as the agent or sub-agent for Mr. Ward in connection with his disability claim; and (f) Lloyd's breached the implied covenant of good faith and fair dealing in numerous ways detailed more fully below.

## THE PARTIES

2.      Plaintiff Andre Ward is, and at all times relevant hereto was, a resident of the state of California, County of Contra Costa.

3.      Roc Nation Sports, LLC is, and at all times relevant hereto was, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in New York and an office in California. As a Limited Liability Company, Roc Nation Sports assumes the citizenship of each of its members.  Roc Nation Sports' only member, Roc Nation, LLC, is a Delaware Limited Liability Company with its principal place of business in New York, New

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

York.   Roc Nation, LLC has two members: (a) Live Nation Worldwide, Inc.; and (b) Marcy Media, LLC.

       a.     Live Nation Worldwide, Inc., is a Delaware Corporation with its principal place of business in Beverly Hills, California. Thus, Live Nation Worldwide, Inc. is a citizen of the States of Delaware and California for diversity purposes.

       b.     Marcy Media, LLC, is a Delaware Limited Liability Company with its principal place of business in New York, New York. For diversity purposes, the members of Marcy Media, LLC, are citizens of the States of New York, New Jersey, California, and Delaware only.

4.     Accordingly, Roc Nation Sports is a citizen, for diversity jurisdiction purposes, of the States of California, Delaware, New Jersey, and New York.

5.     Based upon information and belief, Defendant Lloyd's is, and at all times relevant hereto was, a foreign entity that offers insurance products to individuals and businesses.  The principal offices of Lloyd's are located in London, England.  The syndicates underwriting the insurance policy at issue here participate in an association of underwriters and individual insurance companies existing under the laws of the United Kingdom, which association has its principal place of business in London, England and which sold the Disability Insurance Policy covering Andre Ward and the loss described below.

6.     Upon information and belief, at all relevant times, Lloyd's was and is engaged in the business of, among other things, underwriting disability insurance policies for residents of the State of California, Lloyd's does business in the State of California, and it underwrites insurance policies for risks and individuals located in the State of California.

7.     Based upon information and belief, Defendant ISI, formerly known as International Sports Insurance Services is, and at all times relevant hereto was, a North Carolina corporation with its principal place of business located in Winston

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Salem, North Carolina and was authorized to transact business in the State of
California and has transacted business in this State.

8.    Based upon information and belief, ISI holds itself out to the general
public as being an approved coverholder for Lloyd's.

9.    A description of the rights, duties and obligations of a "coverholder," like
ISI when issuing a Lloyd's policy, is described on the Lloyd's Internet Website[1] as
follows:

> a.    "When a Lloyd's managing agent delegates its authority to an
> approved coverholder under a binding authority, the approved coverholder may
> enter into contracts of insurance and issue insurance documents as evidence that
> contracts of insurance have been accepted. An approved coverholder will
> normally also be allowed to collect premiums, and may be allowed to handle
> claims or perform other functions. The scope of its authority will be set out in
> the binding authority."

> b.    "A coverholder is a company or partnership authorized by a
> managing agent to enter into a contract or contracts of insurance to be
> underwritten by the members of a syndicate managed by it in accordance with
> the terms of a binding authority. Coverholders allow Lloyd's syndicates to
> operate in a region or country as if they were a local insurer. This is achieved by
> Lloyd's syndicates delegating their underwriting authority to coverholders. A
> coverholder can have full or limited authority to underwrite on behalf of a
> Lloyd's syndicate. It will usually issue the insurance documentation and will
> often handle claims. The document setting out the terms of the coverholder's
> delegated authority is known as a binding authority."

[1]    https://www.lloyds.com/the-market/i-am-a/delegated-authority/about-coverholders/role-of-coverholders

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

COMPLAINT

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of the citizenship of the parties and the amount in controversy is greater than $75,000, exclusive of interest, attorney fees, and costs.

11.     This Court has personal jurisdiction over the defendants because, among other reasons:  (a) the Subject Policy of insurance issued by Lloyd's (described more fully below) insured an individual who resides within this State and this judicial district; (b) was procured through ISI, a wholesale insurance broker, licensed to do business in this State; (c) provides that Lloyd's shall submit to the jurisdiction of a court of competent jurisdiction within the United States.

12.     Venue is proper in this judicial district, and division, pursuant to 28 U.S.C. §§ 1391 (a), (b) (2), and (c) because a substantial part of the events and giving rise to this claim occurred and/or the Insured Person (Mr. Ward) is a resident of this judicial district and defendants transact insurance business in this judicial district.

**GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

13.     Plaintiff Andre Ward is a former professional boxer who fought professionally between 2004 and 2017.  He retired from boxing with an undefeated professional record of 32 wins (16 by knockouts) and 0 losses.

14.     Mr. Ward began boxing at the age of 13 and he did not lose a boxing match between February 1998 and September 2017.  He finished his amateur boxing career with a record of 115 wins and 5 losses.

15.     Mr. Ward won and held the following amateur boxing titles:  (a) United State Amateur Middleweight Champion (2001); (b) Under 19 National Champion (2002); (c) United State Amateur Light Heavyweight Champion (2003); and (d) he won the Light Heavyweight Gold Medal competing for the United States at the 2004 Olympics held in Athens, Greece.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

16.     Mr. Ward also won and held multiple professional world titles in two weight classes.  As a super middleweight, between 2009 and 2015, Mr. Ward won the following world titles:  (a) the  unified WBA (Super); (b) The WBC; (c) the Ring magazine; and (d) the Lineal world championships.  During 2016 and 2017 Mr. Ward won the following light heavyweight titles:  (a) the unified WBA (Undisputed); (b) the IBF; (c) the WBO; and (d) the Ring world championships.

17.     During his reign as light heavyweight champion, Ward was ranked as the world's best active boxer, pound for pound, by The Ring magazine, as well as the world's best active boxer in the division by The Ring, and others.

18.     In October 2016, while sparring in his personal boxing gym, Mr. Ward suffered a significant, and ultimately career-ending, injury to his right knee.

19.     On September 21, 2017, Mr. Ward announced his retirement from boxing at the age of 33 via his website stating:  "I want to be clear -- I am leaving because my body can no longer put up with the rigors of the sport and therefore my desire to fight is no longer there. If I cannot give my family, my team, and the fans everything that I have, then I should no longer be fighting."

## FACTS RELATED TO THE SUBJECT POLICY OF INSURANCE

20.     Lloyd's issued to Plaintiffs a professional athlete disability insurance policy, bearing Certificate No. B1132HGBA15062712, covering the policy period December 23, 2015 to December 23, 2016 (the "Subject Policy").  A true and correct copy of the Subject Policy is attached hereto as Exhibit "A."

21.     The Subject Policy lists the "Insured Person" as Plaintiff, Andre Ward, and the "Owner & Beneficiary" under the policy as "Roc Nation Sports."

22.     For a premium payment of $91,733.96, Lloyd's agreed to provide a lump sum payment of $6.3 million ($6,300,000) if Mr. Ward suffered a career-ending injury during the policy period.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

23.     According to the Security List attached to the Subject Policy, Lloyd's Syndicate 382 (the CNA/Hardy syndicate) is the lead underwriter, having subscribed to 45.455% of the risk.

24.     Pursuant to the "Permanent Total Disability (P.T.D.)" coverage part, Lloyd's agreed to

"[P]ay the Permanent Total Disability Lump Sum Benefit Amount [$6.3 million] if the Insured Person [Mr. Ward]:

1.     has a total disability which begins within 12 months of the Accident or first manifestation of any Sickness or Disease, and continues without interruption for the Elimination Period; and

2.     has satisfied the Elimination Period; and

3.     is under the regular care of a Physician throughout the duration of the Total Disability; and

4.     is living on the date the Permanent Total Disability Lump Sum Benefit Amount becomes payable; and

5.     has a Total Disability of continuous and indefinite duration that prevents the Insured Person from ever again Participating in his or her Occupation [listed as Professional Boxer]."

25.     Mr. Ward has satisfied all of the requirements of items 1 through 5 above.

26.     As noted above, while sparring in his personal boxing gym in October of 2016, Mr. Ward suffered a serious accident (defined in the Subject Policy as "a single sudden and unexpected event, which occurs during the policy period….") to his right knee.  Mr. Ward saw Dr. Michael Dillingham on October 19, 2016, because the accident resulted in "pain [and] swelling unlike anything [Mr. Ward] ever experienced" during his entire boxing career.

27.     Mr. Ward ceased working on September 8, 2017, because his October 2016 accident made it impossible for him to continue as a professional boxer.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

28.     On October 12, 2017, Mr. Ward filled out an ISI generated "Disability Insurance Claim Form," together with a Doctors Statement from Mr. Ward's attending physician, which indicated that, after an MRI performed on October 19, 2016, it was determined that the October 2016 accident resulted in a significant and career-ending injury to his right knee.  A true and correct copy of Mr. Ward's October 12, 2017, ISI Disability Insurance Claim Form is attached hereto as Exhibit "B."

## FACTS RELATED TO ISI'S ROLE AS THE WHOLESALE BROKER WITH RESPECT TO THE TENDER OF MR. WARD'S PERMANENT TOTAL DISABILITY CLAIM

29.     Under the "Athlete's Insurance" link on Defendant ISI's Website[2], the broker advises the general public that "[a]thletes make their living putting their bodies on the line each time they slip on the uniform.  Whether a contact-related injury as a running back, or a repetitive motion injury as a major league pitcher, athletes need to protect their salaries and their personal assets.  Fortunately, we offer a variety of insurance products to meet your needs.  ISI also provides coverage for teams and team contracts."  (Emphasis added).

30.     Plaintiffs, sought and purchased the exact protection described on ISI's Website; *i.e.*, an insurance policy to protect Mr. Ward against his future earnings being affected by a career ending injury, like the career-ending accident he suffered in October 2016.

31.     Plaintiff Roc Nation Sports contacted Mr. Ward's retail insurance broker, Atlantic Risk Advisors ("Atlantic"), on September 16, 2017, and notified Atlantic about a possible claim to be submitted by Mr. Ward.

32.     On September 18, 2017, Atlantic advised ISI about Mr. Ward's potential claim, and requested and received a blank ISI generated Disability Insurance Claim Form, and Atlantic forwarded that on to Roc Nation Sports.

---

[2]   http://isinsurance.com/products/athletes

33.     On October 17, 2017, Mr. Ward's completed ISI claim form was provided to Atlantic who, on that same day, forwarded it on to ISI, with a request that ISI forward the claim on to Lloyd's for payment to Roc Nation Sports of the full $6.3 million permanent total disability policy limits arising out of his October 2016 accident.

34.     The first contact by Lloyd's, or any of its representatives, regarding Mr. Ward's claim, happened on December 5, 2017, via an email from Ms. Melanie Thompson, of Empirical Loss Management.  In that email, Ms. Thompson advised Atlantic that Empirical was the third party administrator assigned by Lloyd's to handle Mr. Ward's claim and that Ms. Thompson was the claims adjuster in charge of "Mr. Ward's claim for Permanent Total Disability benefits under Policy No. B1132HGBA16062199."  The policy that Ms. Thompson referenced in the December 5 letter is not the policy that was in effect on the date of Mr. Ward's career-ending injury and is not the policy under which he was submitting his claim form.  A true and correct copy of Ms. Thompson's December 5, 2017, email is attached hereto as Exhibit "C."

35.     Pursuant to California law, Lloyd's was statutorily bound to immediately advise Mr. Ward that his claim had been tendered, and a coverage analysis was being performed, under the wrong policy number and policy year, and that the correct policy involved different Lloyd's syndicates who had not retained Empirical Loss to adjust the claim under the correct policy.

36.     It now appears that, for some unknown reason, either (a) ISI failed to tender Mr. Ward's claim to the proper syndicates listed on the disability insurance policy covering Mr. Ward for the time period of his injury, or (b) Lloyd's simply decided that it would analyze coverage under the policy which incepted well over two months *after* Mr. Ward suffered his career-ending accident in October 2016 in order to delay and stall the claims process.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

37.     In her December 5, 2017 email, Ms. Thompson did not identify the policy period for which she had been retained to analyze coverage, just the policy number for the later issued policy (B1132HGBA16062199).  That number is strikingly similar to the certificate number for the Subject Policy covering the time of Mr. Ward's injury (B1132HGBA15062712).

38.     Neither Lloyd's, nor Ms. Thompson, nor ISI, has ever explained why they spent over a year adjusting this claim under a policy that incepted two months *after* Mr. Ward's accident.

39.     Pursuant to Section 2695.7 of California's Fair Claims Settlement Practices Regulations, Lloyd's was required to either accept or deny Mr. Ward's disability insurance claim, in whole or in part, within forty (40) days of receipt of the tender.  In this case, Lloyd's had until November 27, 2017 to accept or deny, in whole or in part, Mr. Ward's claim.

40.     Over the next several months, Lloyd's (through its appointed claims adjuster, Ms. Thompson) demanded that Mr. Ward provide medical authorization releases, detailed and extensive medical records, and submit to an independent medical examination to be performed by Dr. David S. Chang.

41.     Mr. Ward, through Atlantic, provided Lloyd's, through Ms. Thompson, with all of the requested medical information.  Mr. Ward also submitted to an IME on June 13, 2018.

42.     Even assuming that Lloyd's properly requested additional time to conduct its claims analysis, under California law, Lloyd's had forty (40) days after the IME was performed -- or until July 23, 2018 -- to either accept or deny, in whole or in part, Mr. Ward's disability claim.  Once again, Lloyd's failed to timely do so.

43.     It was not until a full 12 weeks (84 days) after Mr. Ward's IME that Lloyd's, through Ms. Thompson, issued a 4-page letter on behalf of Lloyd's dated September 6, 2018, denying outright any and all coverage for Mr. Ward's disability

claim under the 2016-17 policy.  A true and correct copy of Ms. Thompson's September 6, 2018, denial letter is attached hereto as Exhibit "D."

44.    Rather than simply denying Mr. Ward's claim based on the fact that the 2016-17 policy incepted two months after he suffered his career ending accident and thus did not satisfy the coverage requirement that a "single sudden and unexpected event, occurs during the policy period," Lloyd's instead based its denial primarily on an assertion that there was no "Accident" of "Bodily Injury" as defined by the policy because of alleged pre-existing or degenerative conditions.

45.    By letter dated September 17, 2018, counsel for Plaintiffs responded to the outright denial of coverage by Lloyd's.  In that letter, counsel listed three consecutive annual disability insurance policies issued to Mr. Ward which provided continuous disability coverage from December 23, 2014 through December 23, 2017. A true and correct copy of the September 17, 2017, response letter is attached hereto as Exhibit "E."

46.    In response to the outright denial of coverage, counsel for Plaintiffs noted:

> "As detailed more fully below, the denial by Lloyd's is legally defective for the following reasons, among others:  (1) Lloyd's has violated California's prohibition against engaging in post-claim underwriting in connection with a disability policy; (2) despite being armed with specific information regarding a number of injuries sustained by Mr. Ward during his 20+ year boxing career, and despite having obtained a written medical release authorization from Mr. Ward, Lloyd's made no effort whatsoever before issuing any of the policies, to investigate the severity of any of the several listed injuries identified by Mr. Ward on his applications, including failing to investigate a 2008 torn ACL in his right knee that required reconstructive surgery or a 2015 right knee meniscus injury that sidelined him for a month and a half; and (3) the subject

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMPLAINT

1   policy is both ambiguous and, as written, renders the disability insurance
2   coverage provided illusory, in direct violation of California law."

3   47.   As detailed in counsel for Plaintiffs September 17, 2018 letter, the
4   original denial of coverage by Lloyd's also violated California's statutory prohibition
5   [Cal. Health & Safety Code § 1389.3] against engaging in post-claim underwriting in
6   connection with a disability policy.

7   48.   By its 3-page letter dated October 11, 2018, counsel appointed by
8   Lloyd's affirmed the outright denial of Mr. Ward's claim but, this time, based the
9   denial of coverage exclusively on the following contention:  "There is no coverage
10  under Policy No. B1132HGBA16062199 because the Injury and/or Accident giving
11  rise to the alleged disability did not occur while the Policy was in force."  A true and
12  correct copy of the October 11, 2018, response letter is attached hereto as Exhibit
13  "F."

14  49.   Thus, after having wasted more than a full year responding to requests
15  for medical authorizations and medical records from the Lloyd's claims adjuster, and
16  submitting to an IME, and spending time responding to the alleged pre-existing or
17  degenerative conditions as the primary bases upon which Lloyd's originally outright
18  denied coverage, Lloyd's and its representatives first advised Plaintiffs that the
19  original denial was irrelevant because the accident did not occur during the 2016-17
20  policy period.

21  50.   It is unconscionable for Empirical Loss Management, the claims adjuster
22  retained and appointed by Lloyd's, to have not immediately advised Mr. Ward that,
23  because his accident took place two months before the policy under which Empirical
24  was analyzing coverage had incepted, and delaying an entire year to deny coverage,
25  not on the wrong policy year issue but, instead, on bogus claims of pre-existing or
26  degenerative conditions.

27  51.   It is further unconscionable for ISI to have failed to properly tender Mr.
28  Ward's claim under the correct insurance policy.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

52.     Regardless of which entity, as between Lloyd's and ISI, is more at fault for this claims handling debacle, it is the insured person (Andre Ward), along with the owner and beneficiary under the Subject Policy (Roc Nation Sports), that have been adversely impacted and damaged by the untenable and inexplicable delay.

53.     By letter dated October 11, 2018, counsel for Plaintiffs responded to the second denial by Lloyd's and pointed out this complete waste of time:

> "What your recent letter fails to explain is why the Lloyd's coverage analysis was limited to the 2016-17 Policy or why neither Empirical Loss Management (Empirical) nor your office analyzed coverage for Mr. Ward's claim under the Policy in place at the time of his October 2016 injury; *i.e.*, Policy No. B1132HGBA1602712 (covering the period December 23, 2015 to December 23, 2016).  This omission is curious in light of the fact that the 2016-17 policy not only renewed the 2015-16 policy but also because both policies were issued pursuant to the same authority reference number identified on the Declaration Page of the respective policies."

A true and correct copy of the October 11, 2018, letter from counsel for Plaintiffs is attached hereto as Exhibit "G."

54.     Thereafter, counsel for Lloyd's reached out to counsel for Plaintiffs to indicate that he had ascertained the identity of the lead syndicate for the Subject Policy and he passed on a request from that lead syndicate that Mr. Ward authorize the release of all of prior medical authorizations and medical records previously provided to Empirical Loss Management, along with releasing the IME report prepared by the doctor selected by Empirical, to the lead syndicate for the Subject Policy.

55.     The requested release involved the exact same medical information, records, and IME report previously provided to Ms. Thompson as the appointed Lloyd's claims adjuster which had apparently been sufficient enough for the Lloyd's

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

claims adjuster to exclusively rely upon to make a coverage determination and to deny outright Mr. Ward's disability claim.

56.     By email dated November 21, 2018, counsel for Plaintiffs provided the requested written authorization to release the previously provided medical information "to the lead underwriter on the 2015-16 policy … which, according to the Security List attached to the policy should be Lloyd's Syndicate 382 (CNA Hardy)."

57.     On December 6, 2018 -- fourteen months after the original ISI generated Disability Insurance Claim Form had been provided to ISI and representatives of Lloyd's -- the same claims adjuster who had previously been retained by Lloyd's to issue an outright denial of coverage under the 2016-17 policy (Ms. Melanie Thompson, now with McLarens) was again retained by Lloyd's to analyze coverage under the Subject Policy -- and she sent Plaintiffs a 9-page letter purportedly analyzing coverage under the Subject Policy.  A true and correct copy of the December 6, 2018, letter from Ms. Thompson is attached hereto as Exhibit "H."

58.     By that letter, Lloyd's once again failed to timely accept or deny, in whole or in part, Mr. Ward's disability claim.  Instead, the December 6 letter essentially says nothing, other than Ms. Thompson's assertions that (1) Lloyd's is still investigating the claim with a full reservation of rights, and (2) she does not have enough information to make a coverage determination under the 2015-16 policy.

59.     These assertions are outrageous on their face.  Lloyd's and its claims adjuster, Ms. Thompson, are in possession of the exact same medical information, documents and IME report that Lloyd's and Ms. Thompson had before when they were somehow able, based upon that information to analyze coverage and issue an outright denial of coverage.

60.     Thus, it is sophistry for Lloyd's and Ms. Thompson to suggest that "[a]t this time the Underwriters on the 2015-2016 Policy are in possession of very limited

– 14 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

information pertaining to [Mr. Ward's] claim … [and] reserve their rights to request additional information pursuant to their investigation of the claim."

61. In other words, Lloyd's is not accepting or denying, in whole or in part, Mr. Ward's claim as it is statutorily required to do but now contends that, although the information in the possession of its appointed claims adjuster earlier this year was sufficient enough to make a coverage determination and deny Mr. Ward's claim, the exact same information is now insufficient. The December 6, 2018 letter is little more than further delay and stall tactics by Lloyd's.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

62. Plaintiffs re-allege and incorporate by reference, each and every allegation set forth in paragraphs 1 through 61 inclusive above, as though they are set forth in full.

63. Plaintiffs have fully complied with and have performed all of the conditions and covenants on their part to be performed under the Subject Policy.

64. Lloyd's breached the Subject Policy in a number of ways including, without limitation, the following:

a. Failing and refusing to acknowledge coverage for Mr. Ward's disability claim, in direct violation of Benefits Section B of the Subject Policy even though Mr. Ward has fully satisfied all of the requirements set forth in Items 1-5;

b. Failing and refusing to pay Roc Nation Sports, as the owner and beneficiary of the Subject Policy, the full $6.3 million policy limits in direct contravention of Paragraph 17 of the Uniform Provisions section of the Subject Policy;

c. Failing to properly and timely investigate Mr. Ward's disability claim; and

d.     Failing to timely accept or deny, in whole or in part, Mr. Ward's disability claim in contravention of California law.

65.     Plaintiffs have been damaged, in an amount to be established at trial, as a direct and proximate result of the above listed contract breaches (and others) committed by Lloyd's.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Duty of Good Faith and Fair Dealing)

66. Plaintiffs re-allege and incorporate by reference, each and every allegation set forth in paragraphs 1 through 61 inclusive above, as though they are set forth in full.

67. Implied in the Subject Policy is a covenant that Lloyd's would act in good faith and deal fairly with the Plaintiffs.  That obligation includes, among other things, an obligation that Lloyd's would not do anything to interfere with the Plaintiffs' rights to receive the benefits due and owing under the Subject Policy and that Lloyd's would give as much, if not more, consideration to the Plaintiffs' interest as Lloyd's gave to its own interests in responding to this loss.

68. Instead of complying with these duties and obligations, Lloyd's has acted in bad faith by, among other things, unreasonably, without good cause, and in bad faith:

    a.    Failing to view the medical information and medical records provided, along with the IME report, in the light most favorable to the Insured Person, Andre Ward;

    b.    Viewing, in bad faith, the medical information and medical records provided, along with the IME report through the lens of creating an artifice for denying coverage rather than supporting coverage;

    c.    Placing its own financial interests ahead of the financial interests of the Plaintiffs;

    d.    Engaging in a systematic and orchestrated effort to stall, delay and stonewall payment of Plaintiffs' valid and collectible claim;

    e.    Failing to promptly and properly investigate Plaintiffs' claim with an eye towards honoring its contractual obligations while stringing the Plaintiffs along;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

f.    Otherwise acting contrary to the obligations imposed by the implied covenant of good faith and fair dealing in the Subject Policy.

69.    In breach of the implied covenant of good faith and fair dealing, Lloyd's did the things and committed the acts alleged above for the purpose of consciously withholding from Plaintiffs the rights and benefits to which the Plaintiffs are entitled under the Subject Policy.

70.    The acts described above by Lloyd's are (a) inconsistent with Plaintiffs' reasonable expectations; (b) contrary to established claims practices and legal requirements; (c) contrary to insurance industry custom and practice; (d) contrary to the express terms of the Subject Policy; and (e) constitute bad faith.

71.    As a direct and proximate result of the unreasonable and bad faith conduct of Lloyd's, Plaintiffs have suffered, and will continue to suffer, damages under the Subject Policy, plus interest, and other economic and consequential damages, in a total amount to be shown at the time of trial.

72.    The conduct by Lloyd's is despicable and outrageous, and was done with a conscious disregard of the rights and reasonable expectations of the Plaintiffs, constituting oppression, fraud, and/or malice.  Lloyd's engaged in the acts cited herein for the sole purpose of improperly denying benefits due under the Subject Policy.

73.    Specifically, by acting as alleged above, in light of the information, facts, and relevant law to the contrary, Lloyd's consciously disregarded the rights of the Plaintiffs.

74.    By doing these things, Lloyd's wrongfully deprived the Plaintiffs of the benefit of the policy and inflicted substantial damage on the Plaintiffs.  Lloyd's ignored the interests and concerns of the Plaintiffs, with the requisite intent to injure within the meaning of the California Civil Code Section 3294.  Therefore, the Plaintiffs are entitled to recover punitive damages from Lloyd's in an amount that is

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

sufficient to punish and make an example of Lloyd's and in order to deter similar conduct by Lloyd's in the future.

75.    Additionally, pursuant to the holding in *Brandt v. Superior Court* (1985) 37 Cal.3d 813, the Plaintiffs are entitled to recover all of the costs, expenses, and attorneys' fees reasonably incurred by the Plaintiffs to obtain the benefits of insurance that have been, and continue to be, wrongfully and in bad faith withheld by Lloyd's.  When the precise amounts of these costs, expenses and fees are known, the Plaintiffs will seek leave of Court to amend this complaint.

## THIRD CLAIM FOR RELIEF

### (Breach of Duties as a Wholesale Insurance Broker)

76.    Plaintiffs re-allege and incorporate by reference, each and every allegation set forth in paragraphs 1 through 61 inclusive above, as though they are set forth in full.

77.    In acting as the wholesale insurance broker during the claims process, ISI was acting as either the agent or the subagent for Mr. Ward with respect to such claim activities and, in that capacity, owed Plaintiffs a number of defined duties.

78.    Those duties include, among others, the duty to use reasonable care, diligence, and judgment and the duty to accurately, timely and truthfully submit information to Lloyd's on Plaintiffs' behalf.

79.    Additionally, ISI held itself out as having expertise in the specialized world of disability and LOV insurance for professional athletes and, as such, owed an additional duty to use reasonable care, diligence, and judgment in procuring the insurance requested including the duty to accurately, timely and truthfully submit information to Lloyd's on Mr. Ward's behalf.

80.    As detailed more fully above, ISI breached the duties it owed to Plaintiffs by failing to, among other things:  (a) failing to properly tender Mr. Ward's claim under the correct policy year; (b) failing to ensure that Lloyd's and its retained Third Party Administrator analyzed coverage under the correct policy year; (c) failing to

properly shepherd Mr. Ward's claim through the claims process; and (d) after being specifically advised that Lloyd's had improperly analyzed coverage under the wrong policy, by failing to immediately identify the correct contact person(s) for the lead syndicate on the Subject Policy and push the claim through.

81.     Each of the errors, acts, misrepresentations and/or omissions by ISI, among others, caused Lloyd's to originally deny the claim and to delay payment rightfully owed to Roc Nation Sports for over a year.

82.     ISI's breaches are (a) inconsistent with Plaintiffs' reasonable expectations, (b) contrary to established claims practices and legal requirements, (c) contrary to insurance industry custom and practice, (d) contrary to the express terms of the Subject Policy, and (e) constitute bad faith.

83.     Lloyd's originally denied this valid claim for disability insurance coverage under the policy procured by ISI and has stalled and delayed payment of that claim for over a year due, in large part, as a direct and proximate result of ISI's ineptitude and incompetence in failing to put the proper Lloyd's syndicates on notice as early as possible.

84.     ISI's breach of its duties was a substantial factor in causing Plaintiffs' harm and Plaintiffs' have been damaged, in an amount to be established at trial, as a direct and proximate result of ISI's breaches of the duties owed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

## ON THE FIRST CLAIM FOR RELIEF

1.     For $6.3 million in damages, plus interest, according to proof at the time of trial;

## ON THE SECOND CLAIM FOR RELIEF

2.     For damages, plus interest, according to proof at the time of trial;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    3.    For the amount of reasonable attorneys' fees and expenses incurred by

2  Plaintiffs to obtain the benefits due them under the Subject Policy, plus interest,

3  according to proof at the time of trial;

4    4.    For punitive damages in an amount to be determined at trial;

5                    **ON THE THIRD CLAIM FOR RELIEF**

6    5.    For damages, plus interest, according to proof at the time of trial;

7                    **ON ALL CLAIMS FOR RELIEF**

8    6.    That judgment be entered in favor of Plaintiffs and against Defendants

9  and each of them;

10    7.    For costs of suit incurred herein; and

11    8.    For such other, further, and/or different relief as may be just and proper.

12

13  DATED:  December 14, 2018

14                            REED SMITH LLP

15

16                            By: /s/Richard C. Giller
                                   Richard C. Giller
17                                 Attorneys for Plaintiffs,
                                   ANDRE WARD and ROC NATION
18                                 SPORTS, LLC

19

20

21

22

23

24

25

26

27

28