# EXHIBIT E

# ReedSmith

Reed Smith LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
+1 213 457 8000
Fax +1 213 457 8080
reedsmith.com

Richard C. Giller
Direct Phone: +1 213 457 8028
Email: rgiller@reedsmith.com

September 17, 2018

Via email: Melanie.Thompson@Empiricallm.com

Ms. Melanie Thompson
Claims Adjuster
Empirical Loss Management, LLC
750 E. Britton Road, Suite 100
Oklahoma, OK 73114

Re:   Insured:   **Andre Ward & Roc Nation Sports**
     Policy Nos.:   **1478704; B1132HGBA15062712; and B1132HGBA16062199**
     Policy Terms:   **December 23, 2014 through December 23, 2017**
     Claim:   **Permanent Total Disability**
     Your File:   **9830**

Dear Ms. Thompson:

    The purpose of this letter is twofold: (1) to respond to the outright denial of coverage by certain Underwriters at Lloyd's, London ("Lloyd's") of the above-referenced covered claim, as set out in your letter of September 6, 2018; and (2) to request that Lloyd's withdraw its coverage denial and immediately pay $6.3 million (the policy limits) to Mr. Ward for this clearly covered permanent total disability loss. As a preliminary matter, it is clear both parties are in agreement that California law applies to this loss, not only because Mr. Ward is a California resident but also because, as evidenced by the last paragraph of the September 6 denial letter, Lloyd's concedes that California law controls here.

    As detailed more fully below, the denial by Lloyd's is legally defective for the following reasons, among others: (1) Lloyd's has violated California's prohibition against engaging in post-claim underwriting in connection with a disability policy; (2) despite being armed with specific information regarding a number of injuries sustained by Mr. Ward during his 20+ year boxing career, and despite having obtained a written medical release authorization from Mr. Ward, Lloyd's made no effort whatsoever before issuing any of the policies, to investigate the severity of any of the several listed injuries identified by Mr. Ward on his applications, including failing to investigate a 2008 torn ACL in his right knee that required reconstructive surgery or a 2015 right knee meniscus injury that sidelined him for a month and a half; and (3) the subject policy is both ambiguous and, as written, renders the disability insurance coverage provided illusory, in direct violation of California law.

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-142751033.2

Ms. Melanie Thompson
September 17, 2018
Page 2

**ReedSmith**

### I. LLOYD'S HAS ENGAGED IN PROHIBITED POST-CLAIM UNDERWRITING AS THE BASIS FOR IMPROPERLY DENYING THIS COVERED CLAIM

California law expressly prohibits disability insurers (like Lloyd's here), from engaging in a process known as "Post Claim Underwriting" as a way to try and avoid paying a covered claim. Post claim underwriting has been described as a procedure whereby an insurer (like Lloyd's here) fails to properly investigate the risks associated with providing disability insurance for a particular applicant <u>before</u> issuing a policy and, instead, tries to make up for that glaring pre-inception mistake after a claim has been submitted by finally review medical information it could and should have discovered before issuing the policy and then, using 20-20 hindsight, the insurer searches through those previously available medical records with a fine tooth comb seeking any information as a basis for avoiding having to pay a valid claim.[1] *See, e.g., Hailey v. California Physicians' Serv.*, 158 Cal. App. 4th 452, 471-72 (2007); and Cal. Health & Safety Code § 1389.3 (prohibiting insurers from limiting or denying coverage because of the carrier's "failure to complete medical underwriting and resolve all reasonable questions from written information submitted on or with an application <u>before</u> issuing the plan contract." Emphasis added).

The following holdings in *Hailey* are especially instructive here:

- "'Underwriting' is a label commonly applied to the process, fundamental to the concept of insurance, of deciding which risks to insure and which to reject in order to spread losses over risks in an economically feasible way." (*Id.* at 465; citation omitted).

- "In essence, post claims underwriting occurs when an insurer 'wait[s] until a claim has been filed to obtain information and make underwriting decisions which should have been made when the application [for insurance] was made, not after the policy was issued.' In other words, the insurer does not assess an insured's eligibility for insurance, according to the risk he presents, until after insurance has been purchased and a claim has been made. Although the insurer may ask an applicant for some underwriting information before it issues the policy, it will not follow up on that information until after a significant claim arises." (*Id.*; citation omitted).

- "Only after a claim has arisen will the insurer examine the application and request additional information to see whether the applicant could have been excluded from coverage. <u>An insurer relying upon post claim underwriting, 'instead of looking to pay the claim ... look[s] for all the things in the application that [it] might be able to dig up ... to rescind the policy.'</u>" (*Id.*; emphasis added, citations and internal quotes omitted).

These holdings apply with equal force here. Lloyd's is prohibited under California law from engaging in the very type of prohibited post-claim underwriting as set out in your letter of September 6,

---

[1] *See also, OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 679-80 (5th Cir. 2016) (expert testified that an insurance company's conduct was "not that of a reasonable insurer acting prudently, but was an instance of prohibited 'post-claim' underwriting, which he defined as occurring when 'the insurance company realizes that they have a problem, and they desperately look for a way to avoid paying the claim. And what they'll do is they'll try to search for a morsel of evidence that they can conceivably turn into a material misrepresentation, such as we have here.'"

Ms. Melanie Thompson
September 17, 2018
Page 3

ReedSmith

2018, as a pretext for denying Mr. Ward's valid claim. Despite being among the world's leaders in issuing athlete disability insurance policies, Lloyd's took no steps whatsoever before issuing the subject policy, to investigate the various injuries, surgeries, procedures and medical history listed by Mr. Ward in his insurance applications. Instead, Lloyd's waited until <u>after</u> Mr. Ward submitted a disability claim to finally investigate the severity of the various injuries, surgeries and procedures identified by Mr. Ward on his policy applications, and such post-claim underwriting constitutes prohibited post-claim underwriting under California law and cannot serve as a basis to deny Mr. Ward's valid disability claim.

## II. LLOYD'S FAILED TO PROPERLY INVESTIGATE THE VARIOUS INJURIES IDENTIFIED BY MR. WARD IN HIS APPLICATION RESPONSES

It appears that Lloyd's failed to perform any pre-policy underwriting and failed to conduct any investigation into Mr. Ward's medical history in order to determine "which risks to insure and which to reject in order to spread losses over risks in an economically feasible way." (*Hailey*, *supra*, at 465; citation omitted). Here, Andre Ward fully advised Lloyd's of five different injuries, several of which required surgery and two of which specifically involved the very knee that Mr. Ward ultimately injured so severely that it ended his boxing career.

As noted by the court in *Hailey*:

> "'[i]t is patently unfair for a claimant [like Andre Ward] to obtain a policy, pay his premiums and operate under the assumption that he is insured against a specified risk, only to learn *after* he submits a claim that he is *not* insured, and, therefore, cannot obtain any other policy to cover the loss. The insurer controls when the underwriting occurs.... If the insured is not an acceptable risk, the application should [be] denied up front, not after a policy is issued. This allows the proposed insured to seek other coverage with another company since no company will insure an individual who has suffered serious illness or injury.'"

(158 Cal.App.4th at 465; citation omitted).

Here, had Lloyd's properly performed its underwriting functions before issuing the subject policy, it could have offered a policy with whatever body part exclusions Lloyd's felt was/were warranted and, if Mr. Ward was not comfortable with any such exclusions, he could have shopped his insurance to other carriers to see if he could secure more favorable terms. But, he was foreclosed from doing any of that because Lloyd's shirked its pre-policy issuance underwriting obligations despite owing Mr. Ward an affirmative obligation to "<u>do its underwriting at the time [his] policy application[s] [were] made, not after a claim is filed</u>." *Id*.

As part of the long form Petersen "Professional Athletes Application" form filled in and submitted by Mr. Ward in connection with his 2014-15 PTD policy (No. 1478704), he listed the following injuries, surgeries, procedures and medical history relevant to procuring the requested policy:

**REDACTED**

Ms. Melanie Thompson
September 17, 2018
Page 4

**ReedSmith**

**REDACTED**

As a result, at the time Lloyd's was assessing the risk of providing another PTD policy for Mr. Ward covering the period 12/23/15 to 12/23/16, Lloyd's was fully aware of:

**REDACTED**

Additionally, had Lloyd's conducted a simple Google search for Andre Ward before issuing any of the three PTD policies, Lloyd's would have discovered that Mr. Ward began his boxing career in 1994 and, after winning the gold medal in the light heavyweight division during the 2004 Olympics, Andre made his professional boxing debut on December 18, 2004. During his amateur career (between 1994 and 2014), Andre had 114 wins and just 5 losses. He was 28-0 as a professional between December 2004 and July 2015. In other words, by the time Mr. Ward submitted his renewal PTD policy application (dated July 6, 2015) for the 2015-16 policy year, he had been boxing for over two decades and he had fought in 147 bouts. Those fights are in addition to the thousands upon thousands of hours Andre spent training for his fights and sparring between bouts.

Andre Ward also provided Lloyd's with his written authorization to obtain all medical information from, among others, "physicians, medical professional, hospitals, clinics, [and] other health care provides," concerning any "illness, injury, medical history, diagnosis, treatment and prognosis with respect to any physical or mental condition of [Mr. Ward]." As part of requiring Mr. Ward to agree to this written HIPAA release, the application expressly and specifically noted: "<u>The information obtained [by Lloyd's] will be used to determine if [Andre Ward] is eligible for (a) the insurance requested</u>...." As a result, Mr. Ward justifiably and reasonably understood that Lloyd's was duty bound to fully investigate each of the injuries, surgeries, procedures and medical history listed on his application forms to determine if he was eligible for PTD insurance coverage before issuing each policy without excluding coverage for injuries to either of his knees, his right shoulder, or his left hand.

Ms. Melanie Thompson                                                    ReedSmith
September 17, 2018
Page 5

       As an insurer of professional athletes, Lloyd's was well aware of the fact that missed "playing time" for an athlete is the clearest indication of a significant injury. **REDACTED** should have raised red flags for Lloyd's. As a result, Lloyd's had an affirmative obligation to investigate that revelation further. Instead, despite all of the information and indications contained in the policy application Lloyd's did nothing. Had Lloyd's used the signed authorization form they required Mr. Ward to sign in order to investigate his medical history, Lloyd's should and could have discovered the medical information upon which they are now relying as the primary basis to deny coverage.

       Despite being armed with specific information regarding a number of injuries sustained by Mr. Ward and despite having obtained a written medical release authorization, it appears that Lloyd's made no effort whatsoever before issuing any of the policies to investigate the severity of any of the injuries, including failing to investigate the **REDACTED**

### III. ISSUING A DISABILITY POLICY TO A BOXER WITH A HISTORY OF KNEE INJURIES AND SURGERIES AND THEN DENYING COVERAGE BECAUSE A KNEE INJURY ENDED HIS CAREER, RENDERS THE POLICY AN IMPROPER ILLUSORY CONTRACT

       Like most states, California law does not authorize illusory promises in insurance contracts nor does it allow an insurer to grant coverage in one part of a policy and then rescind that very coverage in some other part. *SDR Co. v. Federal Ins. Co.*, 196 Cal.App.3d 1433, 1437, 242 Cal.Rptr. 534 (1987) ("the law does not countenance such a nullity, for to do so would disappoint the reasonable expectations of the insured, [and] violate the general rules of construing insurance contracts."); *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 274 (1966). It is also well recognized that, when interpreting policy exclusions, courts must consider the nature of the policy at issue and the risks being insured, and must not interpret an exclusion in such a way that would frustrate the very purpose of the coverage obtained by the insured. *Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 304 Ga.App. 314, 696 S.E.2d 326 (2010). The *Barrett* court concluded that "public policy disfavors insurance provisions that 'permit[ ] the insurer, at the expense of the insured, to avoid the risk for which the insurer has been paid' and for which the insured reasonably expects it is covered."[2] A plethora of other cases echo these holdings.

       Here, Lloyd's cannot issue a disability policy covering injuries a professional boxer might sustain and then attempt to avoid paying out on a legitimate claim because that boxer engaged the exact risk insured against; *i.e.*, being a professional pugilist. This conclusion is further buttressed by the well-recognized axiom that "an insurance policy may not purport to offer coverage that inevitably will be defeated by one of the policy's exclusions -- in other words, the policy may not offer coverage that is chimerical." *Cynergy, LLC v. First Am. Title Ins. Co.*, 706 F.3d 1321 (11th Cir. 2013); *accord, St. Paul*

---

[2]   *Accord, American States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996) ("That an insurance company would sell a 'garage policy' to a gas station when that policy specifically excluded the major source of potential liability is, to say the least strange" and the court refused to enforce a pollution exclusion because the definition of pollutants "cannot be read literally as it would negate virtually all coverage.")

Ms. Melanie Thompson
September 17, 2018
Page 6

**ReedSmith**

*Mercury Ins. Co. v. FDIC*, 774 F.3d 702 (11th Cir. 2014) ("public policy disfavors insurance provisions that permit the insurer, at the expense of the insured, to avoid the risk for which the insurer has been paid and for which the insured reasonably expects it is covered.") Similarly, the court in *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 272 F.Supp.2d 1365 (S.D. Ga. 2003), concluded that "when an exclusion completely nullifies the coverage provided in a policy, that exclusion has no effect" and that insurers "should not be allowed to provide illusory coverage. That is, the Insurers must not deceive insurance purchasers into believing they have coverage only to have an exclusionary provision entirely nullify it." *Id.* at 1378.

The policy, as written, is also ambiguous. For example, the policy defines **Total Disability** as "solely and directly as a result of *Injury* **or** *Sickness* the Insured Person is certified by a Physician as being wholly and continuously unable to Participate" as a "Professional Boxer." The terms in initial capital letters constitute defined terms in the policy. **"Injury"** is defined as "physical harm sustained by [Andre Ward] which is the direct cause of a covered Accident [a single, sudden and unexpected event] occurring while the policy is in force, independent of disease or bodily infirmity or any other cause." The other event triggering PTD coverage is "sickness" and yet Lloyd's chose not to define "sickness" as a stand-alone term but, instead, only provides the following definition: **"Sickness or Disease** means an Insured Person's sickness, disease, illness, malady ... which manifests itself during the Coverage Period and is diagnosed by a Physician...."

By including illness and malady as part of the definition of sickness, it is clear that Lloyd's obviously intended to define "sickness or disease" broadly by including "illness" and "malady" as falling within the definition. Additionally, by defining a term with the term itself (*i.e.*, sickness means sickness and disease means disease) the definition is rendered somewhat ambiguous and it is well-settled in California that ambiguities are construed against the insurer and in favor of coverage for the policyholder. *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 433 (1989).

Finally, offering disability insurance to an individual who makes a living as a professional boxer (and who had been boxing for over 20 years at the time the policy incepted) without excluding coverage for any of the body parts that the boxer had previously injured, had surgically repaired, and had identified on his policy application, and then denying coverage because the athlete re-injured one of those body parts renders such disability insurance illusory. The same is true with respect to providing coverage for a permanent disability caused by a single, sudden and unexpected bodily injury causing event as well as by sickness, disease, illness or malady and then including an exclusion for osteoarthritis or degenerative processes (which a reasonable person would understand to constitute sickness, disease, illness or malady) also renders the coverage illusory. And, because California "law does not countenance such a nullity, for to do so would disappoint the reasonable expectations of the insured, [and] violate the general rules of construing insurance contracts," [*SDR Co. v. Federal Ins. Co.*, 196 Cal.App.3d 1433, 1437, 242 Cal.Rptr. 534 (1987)], the outright denial of coverage by Lloyd's is improper under California law.

Ms. Melanie Thompson
September 17, 2018
Page 7

ReedSmith

### IV.  CONCLUSION

As detailed above, we request that Lloyd's withdraw its outright denial of coverage for this claim and immediately pay to Andre Ward the $6.3 million policy limits for this clearly covered permanent total disability loss.

Very truly yours,

*[signature]*

Richard C. Giller

RCG:jm