United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WARD, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, SUBSCRIBING TO CERTIFICATE NO. B1132HGBA15062712, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-07551-JCS<br><br>**ORDER REGARDING MOTIONS TO DISMISS OR TRANSFER VENUE**<br><br>Re: Dkt. Nos. 10, 18 |

## I.　INTRODUCTION

Plaintiffs Andre Ward and Roc Nation Sports, LLC ("Roc Nation") bring this action against Defendants International Specialty Insurance Services, Inc. ("ISI," erroneously sued as "International Specialty Insurance, Inc.") and Certain Underwriters at Lloyd's of London Subscribing to Certificate No. B1132HGBA15062712 ("Lloyd's" or the "Underwriters"). The Underwriters move to dismiss Ward's claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and lack of standing under Rule 12(b)(1), and to dismiss the case for improper venue under Rule 12(b)(3) or in the alternative transfer it to the Southern District of New York. ISI joins in the Underwriters' motion and also moves to dismiss all claims against ISI under Rule 12(b)(6). The Court held a hearing on May 10, 2019. For the reasons discussed below, the Underwriters' motion is DENIED, ISI's motion is GRANTED, and Plaintiffs' claims against ISI are DISMISSED with leave to amend.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. ALLEGATIONS OF THE COMPLAINT

Ward was a successful professional boxer from 2004 to 2017 who held multiple world titles and, before beginning his professional career, won an Olympic gold medal. Compl. (dkt. 1) ¶¶ 13–17.

Lloyd's issued an insurance policy for the period from December 23, 2015 to December 23, 2016, agreeing to provide a $6,300,000 lump sum payment if Ward suffered a career-ending injury. *Id.* ¶¶ 20, 22 & Ex. A. The policy "was procured through ISI, a wholesale insurance broker, licensed to do business in [California]" that "holds itself out to the general public as being an approved coverholder for Lloyd's." *Id.* ¶¶ 8, 11. The policy names Ward as the "Insured Person" and Roc Nation as the "Owner & Beneficiary." *Id.* ¶ 21. The relationship between Roc Nation and Ward is not clear from the complaint.

In October of 2016, "Ward suffered a significant, and ultimately career-ending, injury to his right knee" while he was "sparring in his personal boxing gym," and received medical treatment for pain and swelling. *Id.* ¶¶ 18, 26. As a result of that injury, Ward ceased work as a boxer and announced his retirement from boxing in September of 2017, and Roc Nation contacted Ward's retail insurance broker Atlantic Risk Advisors ("Atlantic," not a party to this case) about a possible claim to be submitted under the insurance policy. *Id.* ¶¶ 19, 27, 31. Atlantic contacted ISI, received a claim form from ISI, and forwarded it to Roc Nation. *Id.* ¶ 32. Ward completed the claim form in October of 2017 and provided it Atlantic, who submitted it to ISI with a request that ISI forward it to Lloyd's for payment of the full policy amount to Roc Nation. *Id.* ¶ 33.

On December 5, 2017, Melanie Thompson of Empirical Loss Management ("Empirical") sent an email to Atlantic stating that Empirical was a third party administrator assigned by Lloyd's to handle the claim, and referenced a different policy number than the policy in force at the time of the injury. *Id.* ¶ 34. The complaint suggests that the policy referenced by Thompson was another policy covering Ward, but for the following year, from December of 2016 to December of 2017. *See id.* ¶¶ 26, 38, 43–44. Plaintiffs allege that either ISI tendered the claim to the wrong

/ / /

/ / /

underwriter syndicates[2] under the wrong policy, or Lloyd's unilaterally decided to analyze the claim under the wrong policy. *Id.* ¶ 36. Thompson, on behalf of Lloyd's, required Ward to provide additional medical documentation and submit to an independent medical evaluation, and Ward complied, including completing the medical evaluation in June of 2018. *Id.* ¶¶ 40–41.

Thompson sent a letter in September of 2018 denying the claim on the grounds that Ward's injury resulted from preexisting or degenerative conditions. *Id.* ¶¶ 43–44. The letter also cited the fact that Ward's injury occurred in October of 2016, while the policy under which Thompson and Lloyd's analyzed the claim did not take effect until December of 2016. *Id.* Ex. D. Plaintiffs' counsel sent Lloyd's a letter challenging the decision and citing the three policies providing continuous coverage of Ward from December of 2014 through December of 2017. *Id.* ¶¶ 45–46 & Ex. E. Counsel for Lloyd's replied by letter dated October 11, 2018 asserting that the injury occurred before the onset of the policy under which Lloyd's processed the claim and that counsel did not represent the underwriters of the other policies, including the policy at issue in this action. *Id.* ¶ 48 & Ex. F. After further exchange of communications, Lloyd's attorneys' provided the information about the claim to the Underwriters of the policy at issue here and Plaintiffs authorized them to provide all relevant medical information, and in December of 2018 Thompson—now working for a different third party administrator, retained by the Underwriters of the 2015–2016 policy—sent a letter stating, among other things, that the Underwriters first received notice of the claim in 2018, had very little information about the claim, and reserved their right to deny the claim for untimely notice. *Id.* ¶¶ 53–58 & Ex. H.

Plaintiffs assert that Defendants violated various provisions of California law governing insurance policies, and bring claims for: (1) breach of contract, against the Underwriters, *id.* ¶¶ 62–65; (2) breach of the implied covenant of good faith and fair dealing, against the Underwriters, *id.* ¶¶ 66–75; and (3) "Breach of Duties as a Wholesale Insurance Broker," against

---

[2] For simplicity and to track the terminology used in the complaint, this order uses the term "Lloyd's" to refer both to the underwriters of the 2015–2016 policy, who are named as defendants in this case, and to the underwriters of the 2016–2017 policy who initially processed and denied Plaintiffs' claim. This choice of terminology should not be taken as implying any opinion as to whether the underwriters named as defendants in this case are in any way responsible for the conduct of the 2016–2017 underwriters.

3

ISI, *id.* ¶¶ 76–84.

## III. ANALYSIS

### A. Personal Jurisdiction

Although the Underwriters' motion does not cite Rule 12(b)(2) and never explicitly argues that this Court lacks personal jurisdiction over any defendant, the motion asserts in a subsection of the Underwriters' argument regarding venue that the Court "lacks general or specific jurisdiction." Underwriters' Mot. (dkt. 10) at 14 (capitalization altered). This order therefore briefly addresses the issue of personal jurisdiction.

"[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)).

As a starting point, with limited exceptions not applicable here, a party must raise all available defenses under Rule 12 within a single motion. Fed. R. Civ. P. 12(g)(2). A party that brings a motion under Rule 12 without asserting a lack of personal jurisdiction under Rule 12(b)(2) waives any such defense. Fed. R. Civ. P. 12(h)(1); *see also Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction."). Because the Underwriters have not moved under Rule 12(b)(2) to dismiss for lack of personal jurisdiction, they have waived any objection and are subject to this Court's personal jurisdiction.[3]

Even if that were not so, the Underwriters have consented to personal jurisdiction by the terms of the policy. On a page of the policy titled "CERTIFICATE PROVISIONS," a section titled "Service of Suit" includes the following provision: "It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured,[4] will submit to the jurisdiction of a Court of competent jurisdiction within

---

[3] ISI concedes that it falls within the Court's personal jurisdiction, and is therefore also subject to personal jurisdiction based on waiver. *See* Case Mgmt. Statement (dkt. 35) at 3.
[4] Roc Nation is listed as the "Assured" on the declarations page of the policy. Compl. Ex. A at ECF p. 5.

4

the United States." Compl. Ex. A at ECF p. 4.[5]  The same provision includes a reservation of the Underwriters' right to seek to transfer a case to a different court "as permitted by the laws of the United States or of any State in the United States," but does not otherwise address whether the Underwriters may challenge personal jurisdiction. *Id.*  Materially identical provisions appear in a subsequent page titled "SERVICE OF SUIT CLAUSE (U.S.A.)." *Id.* at ECF p. 20.  No party's briefs address any of these provisions, although Plaintiffs' complaint asserts that personal jurisdiction is proper in part because the policy "provides that Lloyd's shall submit the jurisdiction of court of competent jurisdiction within the United States." Compl. ¶ 11.

While the policy does not distinguish between personal jurisdiction and subject matter jurisdiction, the promise to "submit to the jurisdiction of a Court of competent jurisdiction" makes little if any sense except as a waiver of objection to personal jurisdiction.  The first part of the sentence—"shall submit to the jurisdiction"—presumably refers to *personal* jurisdiction because only personal jurisdiction can be waived, while subject matter jurisdiction exists regardless of whether a party "submits" to it.  The second part of the sentence—"of a Court of a competent jurisdiction"—therefore presumably refers to competent *subject matter* jurisdiction, because a promise to submit to the personal jurisdiction of a court that already has personal jurisdiction would be meaningless.  As this Court has subject matter jurisdiction under 28 U.S.C. § 1332—an issue no party disputes—because no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000, the policy establishes the Underwriters' consent to personal jurisdiction.

Accordingly, based on both the language of the policy and the Underwriters' failure to contest personal jurisdiction, the Underwriters are subject to the personal jurisdiction of this Court.

**B.  Motion to Dismiss for Improper Venue**

A party may bring a motion to dismiss an action for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.  When venue is improper, the court "shall

---

[5] Much but not all of this exhibit includes internal page numbers.  To account for the pages lacking such numbers, this order cites the exhibit using the page numbers assigned by the Court's ECF docket system, which run from 1 through 27, not by the internal page numbers beginning on the page titled "SCHEDULE" (ECF p. 6), which run from 1 through 20.

5

dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The plaintiff bears the burden of showing that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). On a motion to dismiss under Rule 12(b)(3), "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted).

The federal statute governing "Venue in General" reads as follows:

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The Underwriters contend that the case should be dismissed for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, arguing that no "substantial part of the events or omissions giving rise to the claim occurred" in this district, Underwriters' Mot. at 12 (quoting 28 U.S.C. § 1391(b)(2)), and that "Defendants lack residency, *id.* at 14 (citing 28 U.S.C. § 1391(c)(2) and presumably also referring to § 1391(b)(1)). The Court concludes that venue is proper under either § 1391(b)(1) or § 1391(b)(2).

With respect to venue based on residency under § 1391(b)(1), "an entity [other than an individual] with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C § 1391(c)(2). As discussed above, the Court has personal jurisdiction over Defendants based on waiver and consent, even if for no other reason. As far as this Court is aware, every court to consider the issue has held that personal jurisdiction even based on waiver is

6

sufficient to establish "residency" for the purpose of § 1391(c)(2). *See, e.g.*, *Augusta Nat'l, Inc. v. Green Jacket Auctions, Inc.*, No. CV 117-096, 2018 WL 797434, at *3 (N.D. Ga. Feb. 8, 2018) (collecting authority); *AT&T Corp. v. Teliax, Inc.*, No. 16-cv-01914-WHO, 2016 WL 4241910, at *2 (N.D. Cal. Aug. 11, 2016) (quoting a leading treatise for the rule that where "'an entity defendant waives its right to object to personal jurisdiction, it has ipso facto consented to venue under [28. U.S.C. § 1391]. It is, after all, "subject to personal jurisdiction with respect to the civil action in question."'" (citation omitted; alteration in original)). Because both the Underwriters and ISI fall within the Court's personal jurisdiction, all Defendants are "residents" of this district under § 1391(c)(2), and venue is proper under § 1391(b)(1).

As a separate and independently sufficient reason that venue is proper, "a substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391(b)(2). There is no dispute that Ward was injured in this district, sought medical treatment in this district, and submitted to an independent medical evaluation in this district. *See, e.g.*, Compl. ¶¶ 26, 41 & Ex. B (claim form indicating that Ward's doctor is located in Redwood City, California). The nature of Ward's injury was one of the reasons that Lloyd's initially denied Ward's claim, and might well be at issue in this litigation. *See id.* ¶¶ 43–44 & Ex. D. As a resident of this district, Ward was also likely present here when he filled out the disability claim form that was submitted via Atlantic to ISI, and via ISI to Lloyd's. *See id.* ¶¶ 28, 33 & Ex. B.

The Underwriters argue that the relevant facts giving rise to the claim are "'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" Underwriters' Mot. at 13 (quoting *Tech. Credit Corp. v. N.J. Christian Acad., Inc.*, 307 F. Supp. 3d 993, 1002 (N.D. Cal. 2018)). According to the Underwriters, those facts support venue in New York, where Roc Nation is located (or perhaps in North Carolina, where ISI is located). *See id.* at 12–14.

But "§ 1391 does not require that a majority of the events have occurred in the district where the suit is filed, nor does it require that the events in that district predominate," and "venue may be proper in multiple districts if a 'substantial part' of the underlying events took place in each of those districts." *Tech Credit*, 307 F. Supp. 3d at 1002 (citations and internal quotation

marks omitted). In the Second Circuit decision cited by *Tech Credit* for the list of contract-related facts on which the Underwriters rely, the court made clear that they were not the only facts that might be relevant, and went on to state that venue would have also been proper in another district where, among other relevant facts, "the original injury" giving rise to an insurance claim occurred. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 358 (2d Cir. 2005). The Underwriters cite no case holding venue improper in the district where an injury giving rise to an insurance claim occurred, and the Court concludes that Ward's injury, medical treatment, evaluation, and completion of the claim form are sufficient to establish that "a substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391(b)(2).

The motion to dismiss for improper venue is DENIED.

### C. Transfer Under 28 U.S.C. § 1404

In the alternative, the Underwriters seek to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404. Underwriters' Mot. at 17–24.

A case may be transferred "[f]or the convenience of parties and witnesses, in the interests of justice," to "any other district or division where it might have been brought." 28 U.S.C. §1404(a). There are two prongs to this analysis. First, the transferee district must be a district where the case could have originally been filed, meaning the court has jurisdiction and venue is proper. *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. 03-3711 (MHP), 2003 WL 22387598, at *1 (N.D. Cal. Oct. 14, 2003). The moving party bears the burden to prove this first step. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). If the first prong is satisfied, the court decides whether to grant or deny a motion to transfer, balancing "the plaintiff's interest to freely choose a litigation forum against the aggregate considerations of convenience of the defendants and witnesses and the interests of justice." *Wireless Consumers*, 2003 WL 22387598, at *1; 28 U.S.C. § 1404(a). The factors a court may consider include:

> (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

*Royal Queentex Enters. Inc. v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *2 (N.D. Cal., March 1, 2000) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). The Ninth Circuit has also endorsed a partially-overlapping set of considerations as "example[s]" of factors "the court may consider" in determining whether to transfer a contract case:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof[, among other factors.]

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Weighing the relevant factors is a matter of "the discretion of the trial judge." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (citation and internal quotation marks omitted). Transfer is not appropriate under § 1404(a) where it "would merely shift rather than eliminate the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

While there is no dispute that the case could also have been brought in New York, the Court declines to transfer it there. "As a general rule, the plaintiff's choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer." *Edwards v. Depuy Synthes Sales, Inc.*, No. C 13-6006 CW, 2014 WL 2194798, at *2 (N.D. Cal. May 22, 2014). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843.

The Underwriters have not shown that proceeding in the Southern District of New York would be substantially more convenient than proceeding in this district. The Underwriters identify no party or witness in New York except Roc Nation, which, of course, has chosen to file its case here. Witnesses from ISI or Lloyd's, located in North Carolina and London, would need to travel a significant distance to appear in either district. The location of non-party witnesses is particularly important because it implicates "the availability of compulsory process to compel attendance." *See Jones*, 211 F.3d at 499. The likely non-party witnesses apparent from the

9

current record are the doctors who treated and examined Ward, who are located in this district, and—to the extent that she would not be considered subject to the Underwriters' control—third party administrator Melanie Thompson, who appears to be located in Oklahoma City, almost exactly equidistant from San Francisco and New York. *See* Underwriters' Mot. at 20–21; Compl. Ex. H. Under these circumstances, the facts that one of the parties to the policy (Plaintiff Roc Nation) is located in New York and that New York law might apply,[6] an issue the Court declines to resolve on the present motion but assumes for the sake of argument in considering whether to transfer the case, are not sufficient to set aside Plaintiffs' choice of forum. The motion to transfer is DENIED.

### D. Ward's Standing Under the Policy

The Underwriters contend that Ward's claims should be dismissed because only Roc Nation has a sufficient interest in the policy to sue. The Underwriters raise similar arguments under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Underwriters' Mot. at 3–10.

#### 1. Legal Standards for Motions Under Rules 12(b)(1) and 12(b)(6)

Whether a party has standing under Article III of the United States Constitution implicates a district court's subject matter jurisdiction and can be raised on a motion under Rule 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). A party

---

[6] A number of courts have held that "[f]ederal courts have an equal ability to address claims arising out of state law." *Bloom v. Express Servs. Inc.*, No. C 11-00009 CRB, 2011 WL 1481402, at *5 (N.D. Cal. Apr. 19, 2011). "District courts regularly apply the law of states other than the forum state," *Turrett Steel Corp. v. Manuel Int'l Inc.*, 612 F. Supp. 387, 390 (W.D. Pa. 1985), thus "this factor is to be accorded little weight . . . because federal courts are deemed capable of applying the substantive law of other states," *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 261 (E.D.N.Y. 2010) (citation and internal quotation marks omitted).

challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction, like that raised by the Underwriters here,[7] the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

A complaint may also be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v.*

---

[7] Although the Underwriters submit a declaration by their attorney George Vogrin, the declaration attaches only copies of court decisions, not evidence. *See generally* Vogrin Decl. (dkt. 10-1). The parties are advised that citations in legal argument are generally sufficient to bring case law to this Court's attention, and copies of decisions need not be provided unless a decision is unavailable in the major legal research databases.

11

*Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 2. Ward's Claims Do Not Warrant Dismissal at the Pleading Stage

The central dispute here is whether Ward is himself a party to the policy with standing to sue for its breach and for breach of associated duties, or whether Ward's health is merely the object of a contract between Roc Nation and the Underwriters. The parties have identified no cases addressing analogous circumstances.

The Underwriters cite a number of cases that stand for the indisputable proposition that someone with no interest in the outcome of a case is not a proper party and lacks standing to sue. *See, e.g.*, *Cleveland v. Deutsche Bank Nat. Tr. Co.*, No. 08cv0802 JM(NLS), 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009). Plaintiffs cite a number of cases recognizing duties owed by insurers to the "insured." *See, e.g.*, *Villa v. Allstate Ins. Co.*, No. 2:13-CV-02476-MCE, 2014 WL 2154481, at *5 (E.D. Cal. May 22, 2014). None of those cases, however, involve a policy where—as the Underwriters contend is the case here—the "insured" who suffered harm purportedly triggering payment of benefits[8] was not the party who procured the policy and did not stand to benefit from it.

In the absence of authority to the contrary, the Court concludes for the purpose of the

---

[8] Perhaps the closest case cited by the Underwriters is *Hatchwell v. Blue Shield of California*, 198 Cal. App. 3d 1027 (1988). In *Hatchwell*, a California appellate court held that the wife of a husband allegedly entitled to medical benefits lacked standing to bring a claim based on denial of benefits to the husband because she "was not a contracting party," even though she was a "dependent beneficiary" who would have been entitled to her own medical coverage under the same healthcare plan had she needed care, analogizing to an earlier case where a wife's separate insurance policy did not give her standing to enforce her husband's policy from the same insurer. *Hatchwell*, 198 Cal. App. 3d at 1034–35 (citing *Fryer v. Kaiser Found. Health Plan*, 221 Cal App. 2d 674 (1963)). Unlike in those cases, Ward is neither the beneficiary of a separate insurance policy nor entitled to separate coverage under the policy at issue, and the core questions of whether the parties understood Ward to be a "contracting party" and whether he had an interest in the payment of benefits to Roc Nation are in dispute.

present motions that the questions of Ward's standing and propriety as a plaintiff turn on whether Ward is a party to the policy and whether the parties understood that Ward had an interest in the payment of benefits to Roc Nation. As noted above, the Court generally takes allegations of a complaint as true both under Rule 12(b)(6) and in the context of a facial challenge under Rule 12(b)(1). Plaintiffs allege here that "*Plaintiffs* [i.e., both Roc Nation and Ward] sought and purchased . . . an insurance policy *to protect Mr. Ward* against *his* future earnings being affected by a career ending injury." Compl. ¶ 30 (emphasis added). To the extent that allegation fails to address Defendants' understanding of the contract, or could be considered too conclusory to be taken as true, the policy attached to the complaint sheds further light on whether it is plausible that the parties understood Ward to be a party to the policy with an interest in its benefits.

The policy provides that the "INSURED PERSON: (also referred to as 'You' or 'Your' or the 'Insured')"[9] is Ward, while the "OWNER & BENEFICIARY" is Roc Nation. Compl. Ex. A at ECF p. 6. The second page of the policy includes four disclosures that appear to have been prepared by Lloyd's, three of which begin with words in very large bold type, including: "**The Insured** is requested to read this Certificate, and if not correct, return it immediately to the Correspondent for appropriate alteration." *Id.* at ECF p. 3. On a definitions page, the policy provides that "**Owner** if other than the Insured Person means the person or entity who applied and paid for insurance with respect to the Insured Person," but that "**You or Your** means the Insured Person named in the SCHEDULE." *Id.* at ECF p. 10. The policy also places obligations on Ward, such as the following provision addressing an application and medical form:

> The Insured Person shall provide Us with a completed Application and Medical Report within 30 days of inception. . . . Failure to provide the information within 30 days may result in the Policy being cancelled back to inception and time on risk premium may be charged.

*Id.* at ECF p. 7. More generally, the policy requires Ward to cooperate:

> The Insured Person and the Owner shall provide, assist, and cooperate with the Company and its authorized representatives as stated in the

---

[9] Counsel for the Underwriters asserted at the hearing that the policy does not identify Ward as the "Insured," but instead only as the "Insured Person." That assertion was incorrect. The policy uses both of those terms to refer to Ward.

13

> SCHEDULE in the investigation of the incident or claim. In no event shall the Company be liable to pay any benefits hereunder unless the Insured Person and the Owner cooperate with the Company and it [sic] authorized representative.

*Id.* at ECF p. 16, ¶ 5. The policy could have been written to obligate only the "Owner" (Roc Nation) to procure documents and cooperation from the "Insured" (Ward), or to merely condition the Underwriters' payment on whether such cooperation occurs (as it does in the second sentence of the preceding quotation), without mandating that Ward "shall" take any action (as it does in the first sentence). That it instead places these obligations directly on Ward tends to suggest that Ward is a party to the policy. Finally, the "Professional Athletes Renewal Proposal Form" apparently used to obtain the policy is directed to the athlete as an individual—asking, for example, whether "you consulted with or [have] been treated by" medical professionals, and referring to "your original application"—and there does not appear to be any dispute that it bears Ward's signature. *See id.* at ECF p. 26.

If it is not clear that Ward is a contracting party—based on, for example, the policy's use of "you" to refer to the "Insured," the prominent notice given to the "Insured" on the second page of the policy, the obligations placed on the "Insured," and Ward's signature on the renewal application—the policy is at least ambiguous on the subject.[10] The policy is also at least ambiguous as to whether the parties intended that Ward would have an enforceable interest in the payment of benefits to Roc Nation, or that he would be entitled to a duty of good faith and fair dealing in the processing of a claim submitted under the policy.

Both California law and New York law consider extrinsic evidence in at least some circumstances to resolve ambiguity in a contract. *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998); *Non-Instruction Adm'rs, Sup'rs Retirees Ass'n ex rel. Tattersall v. Sch. Dist.*, 988 N.Y.S.2d 343, 345 (App. Div. 2014). The law of both states will also, in at least some circumstances, construe an ambiguous contract against the drafter. *See, e.g.*, *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016); *327 Realty, LLC v. Nextel of N.Y., Inc.*, 55 N.Y.S.3d 202,

---

[10] Some aspects of the policy tend to support the Underwriters' proposed reading of it, such as the undisputed fact that all benefits are to be paid to Roc Nation, and the service of suit clause's requirement that the Underwriters submit to a court's jurisdiction "at the request of the Assured," i.e., Roc Nation, with no reference to suit by "you" or the "Insured," i.e., Ward.

14

203 (App. Div. 2017). The Underwriters cite no authority for resolving ambiguity in their favor and against Plaintiffs at the pleading stage. The Court therefore DENIES the Underwriters' motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6).

### E. Claims Against ISI

Plaintiffs assert that ISI breached its duties as a wholesale insurance broker, including "the duty to use reasonable care, diligence, and judgment and the duty accurately, timely and truthfully submit information to Lloyd's on Plaintiffs' behalf," as well as duties associated with the expertise that ISI held itself out as having in athlete disability insurance. Compl. ¶¶ 78–79. Plaintiffs allege that ISI "was acting as either the agent or the subagent for Mr. Ward" during the claims process by virtue of its role as a wholesale insurance broker. *Id.* at 77. ISI now moves to dismiss under Rule 12(b)(6), arguing that it acted solely as an agent of Lloyd's and owed no duty to Plaintiffs. *See generally* ISI Mot. (dkt. 18).

Unlike the Underwriters, ISI does not dispute, at least at this stage of the case, that California law applies to Plaintiffs' claims. ISI relies exclusively on California law in its briefs. The Court assumes for the purpose of ISI's present motion that California law applies.

Under California law, "generally, an agent who acts in the name of an insurance company is not personally liable for negligence committed within the scope of his or her employment." *Samieian v. Storelee*, No. C 08-03918 SI, 2008 WL 4857757, at *2 (N.D. Cal. Nov. 10, 2008) (citing *Lippert v. Bailey*, 241 Cal. App. 2d 376, 378 (1966)).[11] As an exception to that rule, however, an insurance agent can be liable to the insured as a "dual agent" if "he or she is either an independent broker or has a long-term, special relationship with the insured," with the existence of dual agency to be resolved as an issue of fact. *Id.* at *3 (citation and internal quotation marks omitted); *see Kurtz, Richards, Wilson & Co. v. Ins. Communicators Mktg. Corp.*, 12 Cal. App. 4th 1249, 1258 (1993). "If an insurance agent is the agent for several companies, and either selects

---

[11] Notwithstanding some decisions' use of the term "employment," the seminal case *Lippert* involved self-employed agents rather than employees of an insurance company, 241 Cal. App. 2d at 378, and this rule has been applied to agencies and brokerages as well as to individuals, *see, e.g.*, *Kurtz, Richards, Wilson & Co. v. Ins. Communicators Mktg. Corp.*, 12 Cal. App. 4th 1249, 1258 (1993).

15

the company with which to place the insurance or picks an insurer at the insured's direction, the insurance agent is the agent of the insured, not the insurer." *Mercury Ins. Co. v. Pearson*, 169 Cal. App. 4th 1064, 1073 (2008). As the parties agree, "[t]he actual relationship is determined by what the parties do and say, not by the name they are called." *Maloney v. R.I. Ins. Co.*, 115 Cal. App. 2d 238, 245 (1953); *see* Opp'n to ISI (dkt. 25) at 10; ISI Reply (dkt. 31) at 2.

ISI argues that Plaintiffs' use of Atlantic as their agent supports the conclusion that ISI served as the Underwriters' agent, not Plaintiffs' agent. ISI Reply at 2–3. Plaintiffs rely on decisions from outside of California holding that a wholesale insurance broker can owe a duty to the insured based on its role as a subagent of the insured's retail insurance broker. *E.g.*, *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 499 (4th Cir. 1998); *Passarello v. Lexington Ins. Co.*, 740 F. Supp. 933, 935–36 (D. Conn. 1990). ISI argues that these cases are irrelevant because they are not based on California law, but provides no explanation or authority for how or why California agency law differs under such circumstances. Instead, ISI argues that the policy makes clear ISI served as the Underwriters' agent by instructing Ward and/or Roc Nation to submit any claims to ISI. *See, e.g.*, Compl. Ex. A at ECF p. 5. ISI also argues that Plaintiffs have not alleged any long term relationship with ISI. *See* ISI Mot. at 7–8.

Plaintiffs' allegation that the policy was "procured through ISI," Compl. ¶ 11, and that ISI "act[ed] as the wholesale insurance broker," *id.* ¶ 77, are the type of conclusory assertions not entitled to be taken as true on a motion under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678. Moreover, even if cognizable, those assertions do little to explain the parties' "actual relationship," as "determined by what the parties do and say." *See Maloney*, 115 Cal. App. 2d at 245. Plaintiffs assert in their opposition brief that "ISI does not exclusively sell policies underwritten by Lloyd's"[12] and that, "[i]n reliance on ISI's representations [of expertise], Plaintiffs secured the

---

[12] Plaintiffs request judicial notice of complaints by different plaintiffs in other cases alleging that ISI sold insurance from additional insurers other than Lloyd's. *See* Request for Judicial Notice (dkt. 26); Opp'n to ISI at 6 n.5. Although courts may take judicial notice of public records including filings in other courts, notice is appropriate only for the existence of the document, "not for the truth of the facts recited therein." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (citation and internal quotation marks omitted). The fact that some other plaintiff alleged ISI sold certain insurance policies does not show that ISI in fact sold such insurance, and does not substitute for Plaintiffs here providing their own factual allegations on the subject. The request for

16

Subject Policy by completing an application and submitting it to ISI,"[13] but none of those facts appear in the allegations of Plaintiffs' complaint. Finally, based on the terms of the policy, it is not clear that any error ISI may have committed after Plaintiffs submitted their claim would affect Plaintiffs' ability to recover on their contract claims against the Underwriters, because the policy required only that Plaintiffs submit their claim to ISI, which Plaintiffs allege they did.

Although questions of dual agency are often issues of fact, *see Kurtz*, 12 Cal. App. 4th at 1258, the general rule is that insurance agents are not liable, and Plaintiffs have not offered sufficient factual allegations to support a conclusion that ISI either operated as an "independent broker or ha[d] a long-term, special relationship with the insured," as is necessary to establish the dual agency exception to that rule. *See Samieian*, 2008 WL 4857757, at *2–3. ISI's motion to dismiss is GRANTED, but Plaintiffs are entitled to leave to amend to offer additional factual allegations regarding ISI's role in the matter.

## IV. CONCLUSION

For the reasons discussed above, the Underwriters' motion to dismiss or transfer venue is DENIED, ISI's motion is GRANTED, and Plaintiffs' claims against ISI are DISMISSED with leave to amend. If Plaintiffs wish to file an amended complaint, they may do so no later than May 24, 2019.

**IT IS SO ORDERED.**

Dated: May 10, 2019

JOSEPH C. SPERO
Chief Magistrate Judge

---

judicial notice is DENIED.

[13] There is at least some tension between, on one hand, the assertion in Plaintiffs' brief that they obtained the policy through ISI, and on the other hand, the renewal application attached to their complaint, which indicates that it was submitted to "Peterson International Underwriters," a different "Lloyd's correspondent." *See* Compl. Ex. A at ECF p. 26. This discrepancy is unlikely to be resolved at the pleading stage and, in any event, does not warrant denying Plaintiffs leave to amend.