United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDRE WARD, an individual; ROC NATION SPORTS, LLC, a Delaware Limited Liability Company,

    Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Subscribing to Certificate No. B1132HGBA15062712; and, INTERNATIONAL SPECIALTY INSURANCE, INC., a North Carolina Corporation,

    Defendants.

    /

AND RELATED CROSS-CLAIMS AND THIRD-PARTY CLAIMS

    /

No. C 18-07551 WHA

**ORDER ON MOTIONS TO DISMISS**

## INTRODUCTION

In this insurance action, both an insured and the beneficiary of his insurance policy seek to recover from both their insurance broker and the insurance company. This order resolves the insurance company's cross-complaint and the broker's third-party complaint. Specifically, to the extent stated below, the broker's motion to dismiss the cross-complaint is **DENIED** and the third-parties' motions to dismiss are **GRANTED**.

**STATEMENT**

This insurance story began in 2015 when plaintiffs Andre Ward and Roc Nation Sports, LLC, sought a professional athlete disability insurance policy. At the time, Andre Ward boxed professionally. Plaintiffs, through their wholesale insurance broker, International Specialty Insurance, Inc., secured a policy with underwriters at Lloyd's of London. The policy listed the "Insured Person" as Andre Ward and the "Owner & Beneficiary" of the policy as Roc Nation Sports. At bottom, the policy provided a lump sum payment of $6.3 million if Andre Ward suffered a career-ending injury during the policy period (from December 23, 2015 to December 23, 2016) (Amd. Compl. ¶¶ 23–28) (Dkt. No. 46).

Lloyd's of London works as follows. "Lloyd's of London . . . provides a market for the buying and selling of insurance risk among its members." *Majestic Ins. Co. v. Allianz Inter'l Ins. Co.*, 133 F. Supp. 2d 1218, 1219 (N.D. Cal. 2001) (Judge Samuel Conti). More specifically, Lloyd's members are anonymous underwriters who invest in a percentage of an insurance policy risk. Members belong to subgroups, known as "syndicates." A syndicate is not a legal entity. Syndicates are comprised of anywhere from a few hundred to a few thousand members. Any single policy risk is insured by multiple syndicates. The individual members in a syndicate do not manage their own investments and do not actively participate. Instead, each syndicate appoints one of its members to represent the collective interests of the members in that syndicate. This person is known as the "lead" underwriter. The lead underwriter usually is designated as the representative for all the members and relevant syndicates with respect to that policy. *Id*. at 1219–20. As such, each policy is supposedly separate and unique: even if the insured is exactly the same, in the sense that each policy is backed by different members and syndicates. Often, the actual insurance policy itself will only disclose that single lead underwriter. Whether or not this unique setup excuses any of the conduct at issue is not the immediate point. This paragraph is simply background.

International Specialty is an approved "coverholder" for Lloyd's of London. This means that International Specialty "will normally be allowed to collect premiums, and may be allowed to handle claims or perform other functions." For Lloyd's, "[c]overholders enable

syndicates to underwrite locally without the need for expensive local infrastructure." A contract between Lloyd's and the "coverholder" will delineate the exact scope of the coverholder's authority (Amd. Compl. ¶¶ 8–10).

In October 2016, plaintiff Ward suffered a significant injury to his right knee. He retired from boxing approximately one year later. After retiring, in October 2017, he filled out a "Disability Insurance Claim Form" which contained International Specialty's letterhead. The form did not reference any policy number or specific lead underwriter. International Specialty sent the form to a lead underwriter at Lloyd's of London. It is unclear from the complaint to which lead underwriter International Specialty sent the form. Each year's policy would have likely corresponded to an entirely different lead underwriter (*id*. ¶¶ 19–20, 34, 42; Exh. C).

Whoever received the claim assigned a third-party administrator — Melania Thompson employed by Empirical Loss Management, LLC — to handle the claim. In December 2017, she informed plaintiffs via e-mail that she was the assigned administrator and claims adjuster for the policy. She provided plaintiffs the 2016–17 version of the policy. The complaint does not specify why she provided the 2016–17 policy number to plaintiffs (*id*. ¶¶ 43–44, 47; Exh. G).

Over the next few months, plaintiff Ward provided detailed and extensive medical records and submitted to an independent medical examination. Nevertheless, in September 2018, Ms. Thompson, writing on behalf of the lead underwriter on the 2016–17 policy, denied the claim. According to Ms. Thompson's letter, plaintiff Ward suffered from pre-existing or degenerative conditions and did not suffer from a "single sudden and unexpected event" as required under the 2016–17 policy (*id*. ¶¶ 50–51, 53–54; Exh. H).

After plaintiffs sent a comprehensive letter pushing back on the denial of their disability claim, counsel appointed by the lead underwriter on the 2016–17 policy affirmed the denial. The reason given by counsel for the denial, however, was a new one, namely that "the alleged disability did not occur while the [2016–17 p]olicy was in force." In other words, according to the underwriter's counsel, the claim was now denied because the claim should never have been assessed under the 2016–17 policy at all (*id*. ¶¶ 55, 58; Exh. J).

3

In October 2018, counsel for the underwriters referred the case to the entirely different lead underwriter on the 2015–16 policy (the earlier policy). Somehow, Ms. Thompson (now with McLarens, Inc.) became the third-party administrator for that policy too. In November 2018, plaintiffs authorized the new underwriters to access the prior medical information. In December 2018, Ms. Thompson sent a letter to plaintiffs that the claim was still being investigated and that she did not have enough information to make a coverage determination under the 2015–16 policy. For plaintiffs, after fourteen months of pursuing the disability claim, this December letter constituted the last straw (*id*. ¶¶ 64–71).

Approximately one week after receiving Ms. Thompson's letter, in December 2018, plaintiffs initiated this suit against International Specialty and the lead underwriter on the 2015–16 policy, alleging three claims (Dkt. No. 1). The first two claims, for breach of contract and breach of the implied covenant of good faith and fair dealing, were alleged solely against the lead underwriter on the 2015–16 policy. The third claim, for breach of duties by an insurance broker, was alleged solely against International Specialty for breach of its duty to see that the claim was being adjusted under the right policy.

After months of Rule 12 motion practice before Chief Magistrate Judge Joseph Spero, plaintiffs amended their complaint in May 2019 (Dkt. No. 46). In June 2019, both defendants answered with cross-complaints (Dkt. Nos. 51, 52). The underwriters brought three cross-claims against International Specialty, specifically for breach of contract, contractual indemnification, and common law indemnification (Cross-Compl. ¶ 1) (Dkt. No. 52). International Specialty brought two self-styled "cross-claims" against third-parties McLarens, Empirical Loss, and Melanie Thompson seeking comparative equitable indemnity and declaratory indemnity (Dkt. No. 51-1).

In July 2019, McLarens declined magistrate judge jurisdiction (Dkt. No. 61), leading to random reassignment to the undersigned district judge (Dkt. No. 63). International Specialty then dismissed its claims against Melanie Thompson without prejudice (Dkt. No. 70).

Now, International Specialty moves to dismiss all cross-claims (Dkt. No. 57). McLarens and Empirical Loss also move to dismiss all "cross-claims" (Dkt. Nos. 67, 69). This order follows a hearing.

**ANALYSIS**

As a point of civil procedure, Rule 13(g) permits cross-claims against *co-parties*; Rule 14(a)(1) permits "defending parties" to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Neither McLarens nor Empirical Loss are parties to this action, thus the claims against them cannot be asserted as "cross-claims," but must be asserted under Rule 14(a). For efficiency, this order will treat the claims against McLarens and Empirical Loss under Rule 14(a). *See Southwest Adm'rs., Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). "The decision to allow a third-party defendant to be impleaded under [R]ule 14 is entrusted to the sound discretion of the trial court." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983).

As will be explained below, the lead underwriter's three cross-claims have been plausibly alleged, but International Specialty cannot establish that McLarens and Empirical Loss — as insurance adjusters hired by the insurer — can be held liable to the plaintiffs. Accordingly, the underwriters' cross-claims survive; International Specialty's third-party claims do not.

1. **THE UNDERWRITERS' CROSS-CLAIMS.**

To repeat, the underwriters brought three cross-claims against International Specialty, alleging: (i) breach of contract, (ii) contractual indemnification, and (iii) common law indemnification. International Specialty moves to dismiss each cross-claim. This order holds that each cross-claim has been plausibly alleged.

A. **Cross-Claim For Breach of Contract.**

The underwriters' cross-complaint alleged that a "Binding Authority Agreement" dated May 1, 2015, obligated International Specialty to notify the underwriter of the correct policy for plaintiffs' claim. When International Specialty did not correctly notify the right underwriter, it harmed both the underwriters' reputation and its ability to investigate and adjust plaintiffs'

5

claim. The elements "for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). The underwriters' cross-complaint therefore sufficiently alleged the required elements.

International Specialty argues that the pleading requirements for the first element — existence of the contract — have not been satisfied. Specifically, that the complaint, it insists, must either append the contract to the cross-complaint, quote the material terms verbatim, or " 'allege the substance of its relevant terms.' " *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) (quoting 4 Witkin Cal. Proc. Pleading § 480 (4th ed. 1997)). According to the California Court of Appeal, this last option " 'is more difficult, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.' " *Ibid*.

State pleading requirements don't matter for a federal complaint. *See James River Ins. Co. v. DCMI, Inc.*, No. 11-06345 WHA, 2012 WL 2873763, at *8–9 (N.D. Cal. July 12, 2012). Our court of appeals has held that federal procedural rules apply "irrespective of whether the substantive law at issue is state or federal" and — unless unconstitutional or prohibited under the Rules Enabling Act — "in all civil cases in federal district court." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–03 (9th Cir. 2003) (citation omitted). "Plaintiff['s] citation to a California state case elaborating a pleading standard applicable in a California state court is inapposite in the context of the instant motion, which is governed by the Federal Rules and *Iqbal*." *Mora v. U.S. Bank N.A.*, No. 11-06598 SC, 2012 WL 2061629, at *19–20 (N.D. Cal. June 7, 2012) (Judge Samuel Conti).

International Specialty resists, by citing to non-binding decisions which apply the California standard. None persuades. For example, in one of the decisions International Specialty cited, *Parrish v. National Football League Players Ass'n*, the undersigned applied the aforementioned California pleading standard. 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007). The bottom line there, however, wasn't the pleading standard itself. The problem there was that the appended agreements remained so plainly defective that the breach of contract claim could

not survive. Specifically, there, the plaintiffs had appended agreements to the complaint which either were (i) not referred to in the operative complaint at all, (ii) signed outside the statute of limitations, or (iii) otherwise completely unsigned by the named plaintiffs. Thus, although those plaintiffs weren't required to append the agreements at issue to their complaint at all, once they did, the underlying facts foreclosed their ability to plead the existence of a valid contract.

By contrast, here, the pleaded facts plausibly support the existence of a valid contract. The cross-complaint details that the sole agreement at issue "provide[d] that [International Specialty] was to promptly notify [u]nderwriters of all complaints made in relation to insurances bound under said [a]greement . . . ." (Cross-Cmplt. ¶ 11) (Dkt. No. 52). International Specialty then submitted a claim form indicating that plaintiffs had filed a claim for an injury in October 2016, except "it was not until on or about November 6, 2018, when [u]nderwriters first received notice of Ward's claim" (*id.* ¶¶ 24, 26). These facts, combined with the contractual obligation alleged, give rise to a reasonable inference that International Specialty breached an existing contract, causing harm to the underwriter's business reputation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). International Specialty's motion to dismiss on the underwriter's cross-claim for breach of contract is **DENIED**.

To be clear, this order allows the underwriter's cross-claim to proceed against International Specialty, but that should not be construed as excusing the underwriter's own denials or refusals regarding coverage.

### B. Cross-Claims For Indemnity.

Now for indemnity. In general, indemnity refers to "the obligation resting on one party to make good a loss or damage another party has incurred." *Prince v. Pacific Gas & Electric Co.*, 45 Cal. 4th 1151, 1157 (2009). "[T]here are only two basic types of indemnity: express indemnity and equitable indemnity." *Ibid.* Here, as alleged against International Specialty, the underwriters bring one claim for express indemnity and one claim for equitable indemnity. Both have been plausibly alleged.

"Express indemnity refers to an obligation that arises by virtue of express contractual language establishing a duty in one party to [hold] another harmless upon the occurrence of

7

specified circumstances." *Id*. at 1158 (internal quotations omitted). The cross-complaint alleged that under the agreement between the underwriters and International Specialty, International Specialty agreed to indemnify underwriters for liability "arising out of" negligent acts, errors, and omissions. International Specialty then negligently failed to notify the proper underwriter of plaintiffs' claim.

International Specialty argues that this failure did not cause underwriters to breach the separate agreement underwriters had with plaintiffs Ward and Roc Nation Sports. Taking the allegations as true, however, the underwriters breached the contract with plaintiffs because the claim had not been timely processed, which occurred because International Specialty negligently, perhaps recklessly, failed to notify the proper underwriter of plaintiffs' claim. This indemnity allegation therefore suffices at this stage.

If at summary judgment, the express indemnity claim fails, it is plausible that equitable indemnity might still be applicable. Thus, although the equitable indemnity claim might ultimately be foreclosed by the contract, both indemnification claims survive International Specialty's motion to dismiss. The motion to dismiss on the underwriters' cross-claims for indemnity are therefore **DENIED**.

**2.     INTERNATIONAL SPECIALTY'S THIRD-PARTY CLAIMS.**

Turning to the third-party claims, International Specialty alleged two claims for equitable indemnity against third-parties McLarens and Empirical Loss. International Specialty does not articulate a legal duty the third-parties owed to the plaintiffs. Since plaintiffs could not sue these third-parties for breach of duties by an independent wholesale insurance broker and dual agent, the third-parties cannot indemnify International Specialty for that claim, as now explained in detail.

Equitable indemnity "applies only among defendants who are jointly and severally liable to the [injured party]." *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004); *see also Hoffman v. May*, 313 F. App'x. 955, 957 (2009). "[T]here must be some basis for tort liability against the proposed indemnitor." *Ibid*. Put

otherwise, the third-party defendant must be liable to the injured party. *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Grp.*, 143 Cal. App. 4th 1036, 1041–42 (2006).

International Specialty tries three different ways to connect the adjusters to our plaintiffs. None comes close. International Specialty's main assertion is that a duty of care arises when an adjuster commits "independent torts" such as misrepresentation or deceit. *See Bock v. Hansen*, 225 Cal. App. 4th 215, 228 (2014). This fails. *First*, both misrepresentation and deceit are categories of fraud; no alleged facts point to fraud committed by any of the parties, much less so when viewed under the requirements of Rule 9(b). *Second*, the California Court of Appeal has long held that an independent adjuster engaged by an insurer owes no duty of care to the insured with which the adjuster has no contractual relationship for negligence. *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249, 254 (1999).

Next, International Specialty leans on agency law. Insurance adjusters are agents, hired by a principal, the insurance company, to investigate and adjust a claim. Agents are generally liable to third-parties for their torts. CAL. CIV. CODE § 2343(3); *Peredia v. HR Mobile Services, Inc.*, 25 Cal. App. 5th 680, 694 (2018). Here, the only harm alleged by plaintiffs is an economic loss. "Agents are not liable to third parties for economic loss." *Sanchez,* 72 Cal. App. at 255. Moreover, no decision has ever held an insurance adjuster liable to an insured for economic losses arising from mere negligence under Section 2343(3).

Finally, International Specialty argues that the third-party adjusters violated the standard of care established by Insurance Code Section 790.03(h), which prohibits certain "unfair claims settlement practices" by insurers. Section 790.03(h) does not establish a duty here to plaintiffs. As International Specialty concedes, there is no private right of action for violation of the Act — only the Insurance Commissioner may enforce the statute. *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 313 (1988), *overruling Royal Globe Ins. Co. v. Superior Court*, 23 Cal.3d 880 (1979). "[A] statutory duty authoritatively construed as providing no private right of action supplies no basis for imposing a common law private right of action indistinguishable from the barred statutory claim." *Sanchez,* 72 Cal. App. at 256. That is the end of it.

In its briefing, International Specialty cited to three decisions, each of which allow a violation of Section 790.03(h) to serve as *evidence* in establishing an insurer breached its duty to its insured. *See, e.g.*, *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 915 (2000); *Rattan v. United Services Auto. Ass'n*, 84 Cal. App. 4th 715, 724 (2000); *Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, 71 Cal. App. 4th 1260, 1269 (1999). These three decisions, however, are inapposite because they either applied to claims for bad faith or to establish the relief of estoppel. As alleged, the adjusters owe no duty to plaintiffs here.

With respect to International Specialty's declaratory indemnity claim, where a claim for declaratory relief is merely duplicative of other claims asserted, dismissal is proper. *Swartz v. KPMG LLP*, 476 F.3d 756, 765–66 (9th Cir. 2007). Thus, the second claim for declaratory indemnity fails as well. To the extent stated, McLarens and Empirical Loss's motions to dismiss are therefore **GRANTED**.

## CONCLUSION

Based on the foregoing, broker International Specialty's motion to dismiss the cross-complaint is **DENIED**. The answer is due within **FOURTEEN CALENDAR DAYS**. The motion for third-party Empirical Loss Management, LLC to join McLarens, Inc.'s motion to dismiss is **GRANTED**. To the extent stated, third-parties McLarens, Inc. and Empirical Loss Management, LLC's motions to dismiss are **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 27, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE