George J. Vogrin, Esq. (CSB #264342)
Michael J. Frimet, Esq. (*Pro Hac Vice*)
Walter D. Santiago, Jr. (*Pro Hac Vice*)
VOGRIN & FRIMET, LLP
9465 Wilshire Blvd, Suite 300
Beverly Hills, CA 90212
Phone: (212) 513-1075
Fax:  (212) 409-8338
Email: gvogrin@vogrinfrimet.com
        mfrimet@vogrinfrimet.com
        wsantiago@vogrinfrimet.com

Attorneys for Defendant, CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON, Subscribing to Certificate
No. B1132HGBA15062712

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDRE WARD, an individual; ROC NATION SPORTS, LLC, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Subscribing to Certificate No. B1132HGBA15062712; and, INTERNATIONAL SPECIALTY INSURANCE, INC., a North Carolina Corporation,<br><br>Defendants.<br><hr>INTERNATIONAL SPECIALTY INSURANCE SERVICES, INC. now known as Ferrum Holding Corp., a North Carolina Corporation,<br><br>Third Party Plaintiff,<br><br>vs.<br><br>BEACH & ASSOCIATES LIMITED, an Ontario, Canada corporation,<br><br>Third Party Defendant. | Case No.: 3:18-cv-07551-WHA<br><br>Judge: Hon. William Alsup<br><br>**DEFENDANT, CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Subscribing to Certificate No. B1132HGBA15062712'S, NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*(Declaration of Linda Rothmann in Support, Declaration of George Vogrin in Support, Memorandum of Points and Authorities; Motion to File Under Seal, Declaration of George Vogrin, and [Proposed] Order filed concurrently herewith)*<br><br>Date:        February 27, 2020<br>Time:        8:00 A.M.<br>Courtroom:  12<br>Judge:        Hon. William Alsup |

1

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 27, 2020 at 8:00 A.M., or as soon thereafter as the matter may be heard in the courtroom of the Honorable William H. Alsup, located in San Francisco Courthouse, Courtroom 12, at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant, Certain Underwriters at Lloyd's of London, Subscribing to Certificate No. B1132HGBA15062712 ("CNA Hardy Underwriters") will and hereby does move this Court for an Order Compelling Arbitration pursuant to the arbitration clause of the disability insurance contract issued by CNA Hardy Underwriters to the Assured, Roc Nation Sports, LLC ("Roc Nation") pursuant to 9 U.S.C. § 1 *et seq.*, the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards and 9 U.S.C § 201 *et seq.*  CNA Hardy Underwriters also request that this Honorable Court exercise its statutory authority and stay further proceedings in this matter pending the outcome of arbitration pursuant to the Federal Arbitration Act §§ 3-4 and 9 U.S.C § 208 and for such other and further relief as this Honorable Court deems just and proper.

This Motion is based upon this Notice of Motion and Motion to Compel Arbitration; the attached Memorandum of Points and Authorities; the filed Declaration of Linda Rothmann and all exhibits referenced therein; the filed Declaration of George J. Vogrin and all exhibits referenced therein; and upon all pleadings, records, and papers on file herein.

Dated: January 17, 2020                    Respectfully submitted,

                                           **VOGRIN & FRIMET, LLP**

                                           By:     */s/ George J. Vogrin*
                                                   George J. Vogrin, Esq.
                                                   Attorneys for Defendant
                                                   CERTAIN UNDERWRITERS AT
                                                   LLOYD'S OF LONDON, Subscribing to
                                                   Certificate No. B1132HGBA15062712

# TABLE OF CONTENTS

Page

I.   INTRODUCTION...................................................................................................1

II.  STATEMENT OF FACTS / PROCEDURAL HISTORY.......................................1

III. ARGUMENT..........................................................................................................5

    A. This Honorable Court Should Compel The Parties to Submit to Arbitration...............5

        1.       The United Nations Convention on the Recognition and
                Enforcement of Foreign Arbitral Awards.................................................5

        2.       Application of Law to Facts.......................................................................6

    B. The Arbitration Clause Contained in the CNA Hardy Policy is
       Valid and Enforceable......................................................................................6

    C. This Honorable Court Must Stay Further Proceedings Regarding the Issue
       of Permanent Total Disability and Should Stay Further Proceedings On All
       Other Issues Pending the Outcome of Arbitration ...........................................9

IV.  CONCLUSION.......................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819 (E.D.N.Y. 1995).......................................10

*AMF, Inc. v. Brunswick Corp.*, 621 F. Supp. 456 (E.D.N.Y. 1985)..........................................7

*AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC,*
    608 F. Supp. 2d 1330 (S.D. Fl. 2009)...........................................................10

*Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135,*
    2011 U.S. Dist. LEXIS 110834, 2011 WL 4529668 (E.D.N.Y. 2011)...........................8

*Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.,*
    264 F. Supp. 2d 926 (N.D. Cal. 2003)..........................................................6

*Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)..........................................9

*Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343 (5th Cir. 2002)...........................................11

*In re Currency Conversion Fee Antitrust Litig.,*
    361 F. Supp. 2d 237 (S.D.N.Y. 2005)..........................................................9

*Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP,*
    434 F. Supp. 2d 211 (S.D.N.Y. 2006)..........................................................9

*Martin v. Certain Underwriters of Lloyd's,*
    2011 U.S. Dist. LEXIS 165352, 2011 WL 13227729 (C.D. Cal. 2011)..........................8

*McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,*
    858 F.2d 825 (2d Cir. 1988)..................................................................7

*McMahan Sec. Co. L.P. v. Forum Capital Mkts., L.P.,*
    35 F.3d 82 (2d Cir. 1994)....................................................................9

*Meadows Indem. Co. v. Baccala & Shoop Ins. Services, Inc.,*
    760 F. Supp. 1036 (E.D.N.Y. 1991)............................................................6

*Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.,*
    814 F.2d 1324 (9th Cir. 1987)................................................................10

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)................................................7

*Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011).....................................5-7

*Rogers v. Royal Caribbean Cruise Lines,*
    2007 U.S. Dist. LEXIS 89088, 2007 WL 9735873.................................................5

*Sharp Corp. v. Hisense USA Corp.,*
    2017 U.S. Dist. LEXIS 200102, 2017 WL 6017897...............................................11

*Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016)....................................................7

*Vaden v. Discover Bank*, 556 U.S. 49 (2009)..........................................................6

*Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*,
    372 F.3d 339 (5th Cir. 2004) ........................................................................................11

*Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998) .......................................7

**Statutes**

9 U.S.C. § 1 ....................................................................................................................1, 5

9 U.S.C. § 3 ..............................................................................................................1, 9, 12

9 U.S.C. § 4 ..............................................................................................................1, 9, 12

9 U.S.C. § 206 .......................................................................................................9-10, 12

9 U.S.C § 208 ...............................................................................................................1, 12

9 U.S.C.S. § 5 ...............................................................................................................9-10

9 U.S.C.S §201 ...............................................................................................................1, 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Certain Underwriters at Lloyd's of London, Subscribing to Certificate No. B1132HGBA15062712 ("CNA Hardy Underwriters") submit this Memorandum of Law in support of its Motion for an Order Compelling Arbitration as set forth in the arbitration clause of the disability insurance contract issued by CNA Hardy Underwriters to the Assured, Roc Nation Sports, LLC ("Roc Nation") pursuant to 9 U.S.C. § 1 *et seq.*, the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards and 9 U.S.C.S. §201 *et seq.*, without waiver of CNA Hardy Underwrites' defenses, now known or unknown, and any applicable exclusions and conditions.  CNA Hardy Underwriters also request that this Honorable Court exercise its statutory authority and stay further proceedings in this matter pending the outcome of arbitration pursuant to the Federal Arbitration Act §§ 3-4 and 9 U.S.C §208 and for such other and further relief this Honorable Court deems just and proper.

## II.    STATEMENT OF FACTS / PROCEDURAL HISTORY

CNA Hardy Underwriters issued a disability policy, Certificate No. B1132HGBA15062712, to Roc Nation, a promoter, to cover Roc Nation's interest in the health of its client, Andre Ward ("Mr. Ward"), a professional boxer, for the policy period of December 23, 2015 to December 23, 2016 (hereinafter the "CNA Hardy Policy").  *See* Declaration of Linda Rothmann ("Rothmann Dec.") at ¶ 3 and ***Exhibit A-1*** attached thereto.  The CNA Hardy Policy provides coverage to Roc Nation in the event Mr. Ward sustained a permanent total disability resulting from accidental bodily injury or sickness or disease.  *Id*.

The CNA Hardy Policy also contains the following relevant provision concerning disputes regarding Mr. Ward's disability status under the CNA Hardy Policy:

**UNIFORM PROVISIONS**
**CONDITIONS PRECEDENT TO RECOVERY**

The conditions and provisions set forth herein are conditions precedent to the obligation of the Company to pay any benefits hereunder.

…

**REDACTED**

*Id*.

Mr. Ward, the Insured Person under the CNA Hardy Policy, was allegedly injured while sparring at his personal gym located in California in October 2016. *See* Declaration of George J. Vogrin ("Vogrin Dec.") ¶ 2 and *Exhibit B* attached thereto. Roc Nation and Mr. Ward (collectively "Plaintiffs") allege Mr. Ward suffered a career ending disability in October 2016; however, Mr. Ward returned to his occupation as a professional boxer after the alleged accident. *Id*. *See also* Vogrin Dec., at ¶ 3 and *Exhibit C* attached thereto at Page 15 – TWENTY-FIRST AFFIRMATIVE DEFENSE. Specifically, Mr. Ward continued to train for and participated in a bout against Sergey Kovalev ("Kovalev") on November 19, 2016, and a rematch against Kovalev on June 17, 2017, both of which Mr. Ward won. *See* Vogrin Dec., at ¶ 3 and *Exhibit C* attached thereto. Although Mr. Ward returned to his occupation as a professional boxer for a period of time after the alleged accident, Mr. Ward ceased working on or about September 8, 2017, and claimed he was unable to return to his occupation as a professional boxer because of the alleged injury he sustained to his right knee in October 2016. *Id*. at ¶ 2 and *Exhibit B* attached thereto. *See also* Rothmann Dec., at ¶ 4 and *Exhibit A-2* attached thereto.

Roc Nation's claim was originally tendered to a subsequent policy year, policy number B1132HGBA16062199 (the "Hamilton Policy"), which was issued by a different lead underwriter ("Hamilton Underwriters") with a policy period of December 23, 2016 to December 23, 2017. Empirical Loss Management, LLC ("Empirical") was retained by Hamilton Underwriters to assist in the investigation and adjustment of Plaintiffs' claim. An investigation ensued, which took approximately one year to complete before the claim was denied by Hamilton Underwriters. *See* Vogrin Dec., at ¶ 2 and *Exhibit B* attached thereto at page 10 ¶¶ 43-44 and ¶ 53 and *Exhibit H* attached thereto.

On or about November 6, 2018, Plaintiffs' claim was submitted to CNA Hardy Underwriters under the CNA Hardy Policy. McLarens, Inc. ("McLarens") was retained by CNA Hardy Underwriters to assist in the investigation and adjustment of Plaintiffs' claim. On or about December 6, 2018, McLarens, on behalf of CNA Hardy Underwriters, issued correspondence to Roc Nation which stated that CNA Hardy Underwriters were in possession of very limited information and would be conducting an investigation while proceeding under a reservation of rights. *See* Rothmann Dec., at ¶ 5 and ***Exhibit A-3*** attached thereto. Plaintiffs filed suit a mere eight (8) days later, preventing any investigation of the claim by the CNA Hardy Underwriters and instead forcing CNA Hardy Underwriters to investigate the claim in the context of this litigation. *See* Vogrin Dec., at ¶ 2 and ***Exhibit B*** attached thereto.

The claim form submitted by Roc Nation in support of its claim for disability benefits is signed by Mr. Ward and a representative of Roc Nation. *See* Rothmann Dec., at ¶ 4 and ***Exhibit A-2*** attached thereto. The date of the accident, or first manifestation of illness is listed as October 2016. *Id*. The claim form indicates Mr. Ward sought medical attention on October 19, 2016. *Id*. The claim form indicates Mr. Ward suffered "pain, swelling unlike anything ever experienced." Mr. Ward denied ever having suffered from this type of injury or illness before. *Id*.

The claim form further indicates that the accident occurred in Mr. Ward's personal boxing gym and occurred while he was sparring. The claim form also indicates that Mr. Ward ceased working on September 8, 2017. *Id*.

The second part of the claim form was completed on October 3, 2017, by Dr. Michael F. Dillingham ("Dr. Dillingham"). The first date of medical care for this alleged condition is noted as October 19, 2016, with magnetic resonance imaging ("MRI"). The alleged incapacity is noted as having commenced in October 2016 and it is noted that Mr. Ward was still incapacitated as of October 3, 2017. *Id*.

**REDACTED**

**REDACTED**

On November 19, 2019, CNA Hardy Underwriters informed Roc Nation through written correspondence that coverage is not triggered in the first instance under the CNA Hardy Policy and therefore, and amongst other reasons, CNA Hardy Underwriters denied this claim for benefits. CNA Hardy Underwriters also advised Roc Nation that, CNA Hardy Underwriters were exercising its right binding arbitration

**REDACTED**

Counsel for Plaintiffs and CNA Hardy Underwriters participated in a meet and confer to discuss CNA Hardy Underwriters invocation of the arbitration clause. During this meet and confer counsel for Plaintiffs indicated that Plaintiffs did not agree with CNA Hardy Underwriters position and would oppose any such motion to compel arbitration. *See* Vogrin Dec., at ¶ 6.

**REDACTED**

1

2

3                              **REDACTED**

4

5

6   III.    **ARGUMENT**

7          CNA Hardy Underwriters is entitled to an Order from this Honorable Court compelling

8   this dispute to arbitration pursuant to 9 U.S.C. § 1 *et seq.* , the United Nations Convention on

9   the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention")

10  and 9 U.S.C.S. §201 *et seq.* (the "Convention Act").  For those reasons set forth below, this

11  Honorable Court should enforce the arbitration provision set forth in the CNA Hardy Policy and

12  stay further proceedings in this action pending the outcome of same.

13         A.    **This Honorable Court Should Compel The Parties to Submit to Arbitration**

14               1.    **The United Nations Convention on the Recognition and Enforcement of
                       Foreign Arbitral Awards**

15

16         The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral

17  Awards, also known as the New York Convention, governs agreements that are "commercial

18  and . . . not entirely between citizens of the United States." *See Republic of Ecuador v. Chevron

19  Corp.*, 638 F.3d 384, (2d Cir. 2011) *citing Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 49 (2d

20  Cir. 2004).  The Convention "promote[s] the enforcement of arbitral agreements in contracts

21  involving international commerce so as to facilitate international business transactions . . . ."

22  *See Republic of Ecuador, supra*, 638 F.3d 384, (2d Cir. 2011) *citing Smith/Enron Cogeneration

23  Ltd. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999).  "The Convention Act

24  'generally establishes a strong presumption in favor of arbitration of international commercial

25  disputes.'" *See Rogers v. Royal Caribbean Cruise Lines*, 2007 U.S. Dist. LEXIS 89088, 2007

26  WL 9735873 *citing Bautista v. Star Cruises, 396 F.3d 1289, 1295 (11th Cir. 2005) (quoting*

27

28

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir.1998).

The Federal Arbitration Act ("FAA") implements the Convention and brings with it "a national policy favoring arbitration of claims that parties contract to settle in that manner." *See Republic of Ecuador, supra*, 638 F.3d 384, (2d Cir. 2011) *citing Motorola Credit Corp., supra*, 388 F.3d 39, 49 (2d Cir. 2004), *Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 1271, 173 L. Ed. 2d 206 (2009). Both the United States and the United Kingdom are signatories to the Convention. *See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926 (N.D. Cal. 2003).

**2.  Application of Law to Facts**

Here, the CNA Hardy Policy forms a commercial contractual legal relationship between CNA Hardy Underwriters and Roc Nation. Further, the CNA Hardy Policy constitutes a written agreement that is not entirely between citizens of the United States, as several of the underwriters, including the lead underwriter, CNA Hardy Underwriters, are citizens of the United Kingdom. *See* Rothmann Dec., at ¶ 3 and *Exhibit A-1* attached thereto. *See also* Rothmann Dec., at ¶ 8. The CNA Hardy Policy contains a clear and unambiguous provision to arbitrate

**REDACTED**  Therefore, this Honorable Court should compel the parties to submit                          to arbitration. *See Meadows Indem. Co. v. Baccala & Shoop Ins. Services, Inc.*, 760 F. Supp. 1036 (E.D.N.Y. 1991) ("The Convention, in addition to the other portions of the Arbitration Act, applies to the arbitration clauses because they arose out of commercial contractual legal relationships not entirely between citizens of the United States.").

**B.      The Arbitration Clause Contained in the CNA Hardy Policy is Valid and Enforceable**

**REDACTED**

**REDACTED**

The Supreme Court of the United States has stated, "There is a substantial Federal concern for the enforcement of arbitration agreements." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985). The Supreme Court has noted that the Federal Arbitration Act reflects "emphatic federal policy in favor of arbitral dispute resolution." *Quackenbush*, at 729 quoting *Mitsubishi Motors Corp.*, at 631. Furthermore, the federal policy favoring arbitrations, "applies with special force in the field of international commerce." *See Republic of Ecuador*, at 393 *quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985).

Courts must rigorously enforce arbitration agreements according to their terms. When a party petitions a court to compel arbitration under the Federal Arbitration Act, the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement. *See Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016).

Moreover, "[n]o magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of the [FAA];" thus, if the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration. *See AMF, Inc. v. Brunswick Corp.*, 621 F. Supp. 456 (E.D.N.Y. 1985); *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998). *See also McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825 (2d Cir. 1988) (where provision called for the appointment of an independent tax counsel to resolve certain disputes, the fact that the contract language did not employ the word "arbitration" was "irrelevant").

**REDACTED**

1

2

3

4

5

6

7

8

9

10

11

12

13

14    **REDACTED**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[2] We note that, in the event this claim is found to be covered, it is Roc Nation who is entitled to the benefits of the CNA Hardy Policy, not Mr. Ward. (emphasis added).

**REDACTED**

**C.      This Honorable Court Must Stay Further Proceedings Regarding the Issue of Permanent Total Disability and Should Stay Further Proceedings On All Other Issues Pending the Outcome of Arbitration**

Section 3 of the FAA provides that the court must stay any suit or proceeding until arbitration has been completed if the action concerns "any issue referable to arbitration" under a written agreement. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) (granting defendant's motion to stay the claims of arbitrating cardholders against all defendants, because those claims were referable to arbitration under a cardholder agreement between the parties) *citing* 9 U.S.C. § 3; *accord Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985); *McMahan Sec. Co. L.P. v. Forum Capital Mkts.*, L.P., 35 F.3d 82, 85 (2d Cir. 1994). The FAA mandates that district courts direct the parties to proceed to arbitration on issues encompassed by the arbitration agreement. *See In re Currency Conversion Fee Antitrust Litig.*, at 249 *citing E.G.L. Gem Lab, Ltd. v. Gem Quality Inst., Inc.*, 1998 U.S. Dist. LEXIS 8678, No. 97-7102 (LAK), 1998 WL 314767, at *2 (S.D.N.Y. June 15, 1998).

Further, Section 4 of the FAA and Section 206 of the Convention Act directs a district court to order parties to proceed to arbitration if there has been a failure, neglect, or refusal of any party to honor an agreement to arbitrate. *See Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP,* 434 F. Supp. 2d 211 (S.D.N.Y. 2006). *See also* 9 U.S.C. § 4 & 206.

**REDACTED**

Section 5 of the FAA states in relevant part:

§ 5. Appointment of arbitrators or umpire

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed
> …

By enacting 9 U.S.C.S. § 5, Congress decided that impasse in the arbitral process was to be avoided where possible. The provision was created to ensure that the parties follow the agreed to procedure for selection of an arbitrator, if such a procedure exists. *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324 (9th Cir. 1987) *superseded by statute on other grounds as stated in Broman v. Riedel Int'l, Inc.*, 1989 U.S. App. LEXIS 23497.[3]

Where a case presents both arbitrable and non-arbitrable claims, the court has the discretion to stay non-arbitrable claims. *AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608 F. Supp. 2d 1330 (S.D. Fl. 2009). In *AXA*, the plaintiff-insurer sought to rescind five insurance agreements which were allegedly procured by defendants through improper and fraudulent means. The defendant-insureds filed motions to compel arbitration in response to plaintiffs first amended complaint. In determining whether the entire action should be stayed, the Court in *AXA* concluded that although only one-half of the claims contained in the amended complaint are arbitrable in that they are lodged against the contracting parties, and are within the scope of the arbitration clauses, the core of plaintiff's suit focuses on alleged breaches of the arbitration agreements and that the contracting parties expressly agreed to submit any disputes regarding the arbitration agreement itself to arbitration. *See also Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 838 (E.D.N.Y. 1995) (entering stay as to non-arbitrable claims lodged against a "myriad of entities" which the plaintiff alleged participated in monopoly scheme because (1) such claims were derivative in nature, "peripheral to," and "[grew] out of" the claims lodged against the parties to the arbitration agreements; (2) most of the non-arbitrable claims would be resolved based on the arbitrable claims; and, (3) many of the non-arbitrable

---

[3] Section 206 of the Convention Act likewise provides "Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. §206.

claims would fail if the claims lodged against the parties to the arbitration agreement were found to be meritless) (*citing Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d. Cir. 1987).

As to litigants who are not parties to the arbitration agreement, the court may stay the litigation as a matter of discretion to await the outcome of the pending arbitration. *Sharp Corp. v. Hisense USA Corp.*, 2017 U.S. Dist. LEXIS 200102, 2017 WL 6017897 *citing Moses H. Cone*, 460 U.S. at 20 n.23. When exercising its discretionary power to stay, a court must weigh the "competing interests which will be affected by the granting or refusal to grant a stay," among which are "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Sharp Corp., supra,* 2017 U.S. Dist. LEXIS 200102, 2017 WL 6017897 *citing Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (*quoting CMAX Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

A stay should be granted where the resolution of issues in the arbitration would be determinative of the issues in the lawsuit. *Sharp Corp., supra*, 2017 U.S. Dist. LEXIS 200102, 2017 WL 6017897 *citing Lockyer, supra,* at 1110 (9th Cir. 2005) (noting that a discretionary stay is warranted where parallel action will help settle or simplify questions of fact and law). *See also Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004) (reversing a denial of stay where the litigation and arbitration were "inherently inseparable"); *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347-48 (5th Cir. 2002) (finding claims against signatory party were inseparable from claims against non-signatory and denial of stay would "undermine the arbitration proceedings . . . thereby thwarting the federal policy in favor of arbitration").

**REDACTED**

Therefore here, just as in *Sharp*, a stay of the

entire action is warranted because it will promote judicial economy, prevent duplicative efforts, avoid inconsistent results and would promote the strong federal policies promoting arbitration.

**REDACTED**

Based upon the above, this Honorable Court is vested with the statutory authority to and should submit the issue **REDACTED** to arbitration **REDACTED** Additionally, this Honorable Court should stay all further proceedings in this matter pending the outcome of same.

## IV.    CONCLUSION

For the foregoing reasons, CNA Hardy Underwriters respectfully request that this Honorable Court issue an order compelling this dispute to arbitration under 9 U.S.C. § 4, and the New York Convention and 9 U.S.C §206.

**REDACTED**

In accordance with 9 U.S.C. §3, 4 & 208 this court should stay this action pending the outcome of the arbitration.

Respectfully submitted,

**VOGRIN & FRIMET, LLP**

Date:    January 17, 2020

By:    */s/ George J. Vogrin*
George J. Vogrin, Esq.
Attorneys for Defendant
CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON, Subscribing to
Certificate No. B1132HGBA15062712